277 So.2d 155 (1973)
David CRENWELGE et al.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
No. 4090.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1973.
Rehearing Denied April 4, 1973.
*156 Lunn, Irion, Switzer, Johnson & Salley, by Harry A. Johnson, Shreveport, for defendants-appellants.
Makar & Whitaker, by John B. Makar, Natchitoches, for defendant-appellant.
Gahagan & Kelly, by Donald G. Kelly, Natchitoches, for plaintiff-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
David Crenwelge, individually and as administrator of the estate of his minor daughter, Melanie Kay Crenwelge, seeks damages resulting from a two car collision. The defendants are (1) State Farm Mutual Automobile Insurance Company, which carried uninsured motorist coverage under separate policies on two automobiles owned by Mr. Crenwelge, and (2) Adam Mallard, the driver of the uninsured vehicle involved in the accident.
The district judge found the accident was caused solely by the negligence of Adam Mallard, driver of the uninsured vehicle, and that plaintiffs could "stack" both the uninsured motorist coverages and the medical payments coverages under the two policies issued to Mr. Crenwelge. Judgment was also awarded in favor of State Farm on its third party demand against Mallard. Only the defendant insurer has appealed.
The issues on appeal are: (1) the stacking of the uninsured motorist coverages; (2) the stacking of medical payments coverages; (3) the assessment of penalties and attorney's fees against State Farm for failing to pay medical payments; (4) the quantums of the awards for personal injuries; and (5) the award for certain expenses resulting from "bodily injury" to Melanie.
GENERAL FACTS
The general facts are that Mr. Crenwelge was driving his Volkswagen automobile, with his minor daughter, Melanie, as a passenger. When he reached an intersection on the highway, the defendant Mallard, who was approaching from the opposite direction, turned left in the path of the Crenwelge vehicle, causing a headon collision. The accident was caused solely by the negligence of Mallard. Both Mr. Crenwelge and his daughter sustained serious personal injuries. We conclude hereinafter the trial judge did not abuse his discretion in awarding general damages in the sum of $12,500 to Melanie and $6,500 to Mr. Crenwelge.

*157 STACKING UNINSURED MOTORIST COVERAGES
In addition to the Volkswagen which he was driving, Mr. Crenwelge owned a Plymouth. State Farm had issued to Mr. Crenwelge a separate liability policy on each automobile. Each policy provided uninsured motorist coverage of $5,000 for each person and $10,000 for each accident. The vehicle being driven by Mallard was uninsured.
In two recent cases our Supreme Court overruled several court of appeal decisions and allowed stacking of uninsured motorist coverages provided by separate policies. In Graham v. American Casualty Company, 261 La. 85, 259 So.2d 22 (1972), plaintiff was a guest passenger in an automobile which collided with an uninsured motorist. Neither vehicle involved in the accident provided uninsured motorist coverage for her damages of $25,000. However, plaintiff had such coverage under three separate policies, two on automobiles owned by her father and the third on her own automobile. Each of these three policies furnished $5,000 uninsured motorist protection. The defendant insurers contended that the standard "pro rata" clauses in the policies limited recovery under each policy to one-third of the $5,000 limit for uninsured motorists. Our Supreme Court rejected this argument and held that the "pro rata" clauses are invalid where their effect is to reduce recovery on an individual policy below the statutory minimum of $5,000. The court awarded $5,000 under each of the three policies, or a total of $15,000. After quoting the pertinent sections of LSA-R.S. 22:1406, which require uninsured motorist coverage in all policies issued in this state, with minimum coverage of $5,000 per person, the court stated its rationale as follows:
"Although the statute quoted requires uninsured motorist protection and sets forth the minimum coverage the policies must provide, it does not prohibit or prevent an insurer from offering more than the minimum coverage specified. Thus there is no impediment to an injured party recovering more than the statutory minimum under an uninsured motorist endorsement. Nor does the law prevent an injured insured under uninsured motorist coverage from recovering the minimum from more than one insurer if the damage sustained warrants such a recovery. What the law does require is that each policy issued provide not less than the minimum $5,000 coverage. Proration does not take place when the damage claimed exceeds the sum of the policies under which the claimant is entitled to recover benefits under the uninsured motorist protection.
"Any effort to reduce the mandatory minimum coverage of each policy by `pro rata' clauses cannot be given effect by the courts."
In Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972) the injured plaintiff was a guest passenger in an automobile owned and being driven by a son-in-law at the time of the collision with a negligent uninsured motorist. There were two policies covering the son-in-law's vehicle, and each provided uninsured motorist coverage of $5,000 per person. Mr. Deane also had uninsured motorist coverage on his own car under a policy issued in Florida, where the state statute requires minimum coverage of $10,000 per person. Deane's damages amounted to $22,902. The insurer under his personal policy defended on the grounds that under the standard "excess" clause in its policy, the primary insurers of the host vehicle were liable for the statutory minimum and hence there was no liability under the excess clause. Following the rationale of their decision in Graham, our Supreme Court held that the "excess" clause, like the "pro rata" clause, is invalid if it reduces the possible recovery on a single policy below the minimum prescribed by statute. Plaintiff was allowed to recover the statutory minimum of $10,000 provided by his personal policy, in addition to the sum of $5,000 from each of the two *158 uninsured motorist insurers of the host vehicle.
The defendant insurer contends that both the Graham and Deane cases are distinguished from the present matter in that there the injured claimants were passengers in automobiles not owned by them, whereas here the injured claimants were riding in an automobile owned by the named insured, Mr. Crenwelge. The defendant says that since the plaintiff and his daughter were riding in the Volkswagen, uninsured motorist coverage is excluded under the "Exclusions" found in Part IV of the policy dealing with uninsured motorists and reading in pertinent part as follows:
"This policy does not apply under Part IV:
(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile;"
The defendant then points to page 5 of the policy which defines an "insured automobile" as one "described in the policy for which a specific premium charge indicates that coverage is afforded." The Volkswagen is not described in the Plymouth policy.
The argument is that this exclusion clause clearly eliminates uninsured motorist coverage under the Plymouth policy, since the named insured and a relative were riding in an automobile owned by the named insured but not described in the policy. We agree with the defendant insurer that under the language of the exclusion clause in question there is no uninsured motorist coverage under the Plymouth policy. However, the rationale of the Graham and Deane cases is that both pro-rata clauses and excess clauses are invalid where their effect would be to reduce the statutory minimum coverage of each policy. In Graham the court said "What the law does require is that each policy issued provide not less than the minimum $5,000 coverage. . . Any effort to reduce the mandatory minimum coverage of each policy by "pro rata" clauses cannot be given effect by the courts." Under the facts of the present case, the effect of the exclusion clause in question is to eliminate the mandatory minimum coverage provided by the policy on the Plymouth. Clearly, we cannot give the clause this effect.
Defendant argues that if we do not give effect to this exclusion clause it will expose insurers to coverage for which no premium is paid. For example, they say if Mr. Crenwelge had owned five automobiles, but chose to reject uninsured motorist coverage on all but one, he and his relatives would nevertheless still be afforded this coverage while occupying any one of the four uninsured vehicles. Our answer to this argument is that the hypothetical facts stated do not apply here and we express no opinion in that regard. In this case the plaintiff owned two cars and he carried separate policies on each vehicle providing uninsured motorist coverage. Under the Graham and Deane cases it is clear that where two or more policies have actually been issued and the premiums for uninsured motorist coverage paid, the mandatory minimum coverages, as provided by the statute, must be awarded under each policy.
It is true that LSA-R.S. 22:1406, subd. D(1) requires only that the uninsured motorists coverage be written "under provisions filed with and approved by the commissioner of insurance." An argument can be made that since this exclusion clause was approved by the Commissioner it must be recognized by the courts. Nevertheless, this same argument can be made as to the pro-rata clauses and excess clauses rejected by our Supreme Court in the Graham and Deane cases. We are unable to distinguish those clauses from the exclusion clause involved here.
Plaintiff also cites Elledge v. Warren, 263 So.2d 912 (La.App., 3rd Cir. 1972), *159 writ refused 262 La. 1096, 266 So.2d 223 for the reason "The judgment is not final". In that case a different panel of this court, (Judges Fruge, Hood and Miller) considered a similar problem. The facts were that Mrs. Elledge owned two automobiles and a Honda motorcycle. Both automobiles were insured under one policy which provided uninsured motorist protection on each. The motorcycle was not insured. Mrs. Elledge's son was operating the Honda motorcycle and had stopped for a traffic light. Two other motorists, one insured and one uninsured, collided and caused one to strike the motorcycle and injure the boy. Mrs. Elledge made a claim against the insurer of her two automobiles, under the uninsured motorist coverage, for damages for personal injuries to her son. The district judge granted the defendant insurer's motion for summary judgment based on the same exclusion as that quoted above from Part IV of the policy. A different panel of this court reversed and remanded.
In Elledge the first issue on appeal was whether the "motorcycle" was an "automobile" within the meaning of the policy. A majority of the panel of this court, with Judge Hood dissenting, held that it was. That issue is not before the panel in the present case and we express no opinion in that regard.
The next issue in Elledge was whether the exclusion clause applied, where a relative of the named insured was injured while occupying the motorcycle, which was owned by the named insured but was not insured. The same majority of the panel, with Judge Hood dissenting, held that even in that situation, where there was no uninsured motorist coverage on the vehicle occupied by the claimant at the time of the accident, the coverage afforded by policies on other vehicles owned by the named insured extended to this uninsured vehicle. That issue also is not before us in the present case, and this panel expresses no opinion in that regard. Here, the vehicle occupied by the named insured and his relative was insured. The Elledge case is therefore distinguished from the present matter on the facts.
STACKING OF MEDICAL PAYMENTS COVERAGES
The next issue is whether the medical payments coverage under the policy on the Plymouth automobile extends to plaintiff and his daughter while occupying the Volkswagen. The facts are that the medical expenses for Mr. Crenwelge were $1,127.70 and those for his daughter were $2,382.06. Each policy provided for medical payments of $500 to each person. The district judge, without discussion, held that plaintiff and his daughter were entitled to recover medical payments of $500 under each policy for a total of $2,000.
In its brief filed in this court, the defendant insurer concedes liability for medical payments of $500 each to plaintiff and his daughter under the Volkswagen policy, for a total of $1,000. Hence, they do not raise the issue presented in Bailes v. Southern Farm Bureau Casualty Insurance Company, 252 So.2d 123 (La.App., 3rd Cir. 1971), writ granted 259 La. 950, 253 So.2d 791, but writ dismissed 259 So.2d 29 because not timely filed. The issue there was whether any medical payments under part II of the policy must be credited against the $5,000 uninsured motorist coverage provided by part IV. We gave effect to the policy provision. However, our decision in Bailes was rendered before the Supreme Court decisions in Graham and Deane which, as discused above, make it clear that the mandatory minimum coverage of $5,000 for uninsured motorists cannot be reduced by pro-rata clauses or excess clauses. We think the same rule would apply to the reduction of the mandatory minimum coverage for uninsured motorists by giving credit for medical payments.
What the defendant insurer contends in the present case is that there is no liability for medical payments under the Plymouth *160 policy. Part IIExpenses for Medical Servicesprovides this coverage under Division 1 to the named insured and each relative:
"(a) While occupying the owned automobile, (that is, according to the policy definitions, the one described in the policy and for which a premium has been charged),
"(b) While occupying a nonowned automobile, but only if such person has, or has reason to believe he has, the permission of the owner to use the automobile and the use is within the scope of such permission, or
"(c) Through being struck by an automobile or by a trailer of any type;"
Part II, Division 2 provides medical payments coverage to persons other than the named insured or his relatives. Hence, we are not concerned with Division 2.
Since the claim here is for medical expenses of the named insured and a relative, it follows that unless coverage can be found within the language of Division 1, there is no coverage under the Plymouth policy. Let us examine subparagraphs (a), (b) and (c) of Division 1 quoted above.
There is no coverage under subparagraph (a) since the named insured and his relative were not occupying "the owned automobile", which is defined in the policy as an "automobile described in this policy for which a specific premium charge indicates that coverage is afforded." The Volkswagen is not described in the Plymouth policy and hence is not "an owned automobile" under the Plymouth policy.
Subdivision (b) of Division 1 does not apply because the named insured and his relative were not occupying a nonowned automobile. The policy defines a "non-owned automobile" as one which is "not owned by or furnished for the regular use of either the named insured or any relative". The Volkswagen occupied by the named insured and his relative was owned by the named insured.
Subdivision (c) of Division 1 does not apply because plaintiff and his relative were not pedestrians who were struck by an automobile or other vehicle. Thus, we find there is no medical payments coverage under the language of the Plymouth policy.
The Graham and Deane cases have no application to medical payments coverage since those cases are based on a state statute which requires uninsured motorist coverage with a minimum limit of $5,000 in every policy issued in Louisiana. We have no state statute requiring medical payments coverage for any amount.
Plaintiff cites no case from this or any other state which requires the stacking of medical payments coverages under separate policies. Plaintiff simply makes the argument that it is "completely inequitable" to charge a premium for medical payments coverage in the Plymouth policy and refuse to pay benefits when the named insured and a relative are occupying another vehicle owned by the named insured. Our answer to this argument is that in the absence of any statute or jurisprudential authority, we must give effect to the policy as written.
We conclude there is no liability for medical payments under the Plymouth policy.
PENALTIES AND ATTORNEYS FEES FOR FAILURE TO PAY MEDICAL PAYMENTS
As stated above, the district judge allowed stacking of the medical payments coverages and awarded penalties and attorney's fees for defendant's failure to pay a total of $2,000 in medical payments. We have concluded there is no liability for medical payments under the Plymouth policy.
*161 But, of course, there is no question that the defendant insurer was liable for medical payments under the Volkswagen policy. The defendant insurer's failure to pay medical payments of $500 each to plaintiff and his daughter under the Volkswagen policy was arbitrary, capricious and without probable cause within the meaning of LSA-R.S. 22:658. Hence, the plaintiff is entitled to a penalty of 12% on $1,000 together with attorney's fees in the sum of $500.
The insurer's defense to penalties and attorney's fees is that it offered to pay Mr. Crenwelge the sum of $9,000 in disposition of all of his claims but that offer was rejected. Apparently, the reasoning is that the medical payment benefits were included within the amount of the offer and were refused. This argument has no merit. There was no absolute and unconditional offer to pay the $1,000 in medical payments which was clearly due. The only offer to pay medical payments was conditioned on plaintiff accepting a smaller figure than that which he claimed, and to which he has ultimately been found entitled, in settlement of all claims. Such a conditional offer does not relieve the defendant insurer of penalties and attorney's fees for failure to pay the amounts as to which there could be no dispute. See Gibsland Supply Company v. American Employers Insurance Company, 242 So.2d 310 (La.App., 2d Cir. 1970), writ of certiorari refused, 257 La. 987, 244 So.2d 858.
THE QUANTUMS OF THE AWARDS FOR PERSONAL INJURIES
The district judge awarded $12,500 in general damages to plaintiff's minor daughter, Melanie. Of course, only $10,000 of this is covered by the defendant insurer's policies. Melanie, who was seven years of age, was thrust forward against the dashboard of the car and suffered a compound fracture of the femur of the right leg. Additionally, the femur was broken in another enclosed place. She also had many abrasions and contusions of the right thigh.
A pin was inserted from the ankle through the tibia and the femur to reduce the fracture. The laceration was closed and sutured and she was placed in traction and administered the usual antibiotics and drugs for pain. She remained in the hospital for one month. Just before her release she was placed in a cast from the waist to the ankle on the right leg and from the waist to the knee on the left leg. Melanie remained in this cast for about two weeks and then with therapy was able to walk on crutches after about two months. As a result, the right leg is somewhat shorter than the left and she has a limp. There will be a residual scar about three inches long above her right knee. Under these facts, the award to Melanie is clearly not excessive.
The district judge awarded Mr. Crenwelge $6,500 in general damages. He was thrown out of the Volkswagen onto the pavement. He suffered a broken ankle, five or six broken ribs and a laceration over his left eye. He was in the hospital about two weeks and left with his ankle in a short cast which he wore for about ten weeks. He still complains of his ankle swelling after heavy exertion. We find the award for general damages to Mr. Crenwelge was also clearly not excessive.
EXPENSES RECOVERABLE AS DAMAGES BECAUSE OF BODILY INJURY TO MELANIE
In addition to the sum of $6,500 in general damages awarded to Mr. Crenwelge, the district judge awarded him the sum of $3,510.20, representing the total medical expenses for plaintiff and his daughter, the sum of $440 for sick leave used by plaintiff's wife, and the sum of $500 actual loss of wages by plaintiff's wife, during the time she was nursing their *162 daughter. The total award to Mr. Crenwelge was $10,950 for which the insurer and the uninsured motorist were held liable in solido.
Part IVProtection Against Uninsured Motoristsprovides that the insurer shall pay:
"All sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile."
Under Part IV, Limits of Liability, (a) it is stated:
"The limit of liability for uninsured motorists coverage stated in the declarations as applicable to `each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as a result of any one accident . . ."
Under these provisions it is clear that the award for all damages arising out of bodily injury to Melanie, including pain and suffering, medical care, loss of wages, etc., cannot exceed the limit of liability of $5,000 under each policy. This is also true of damages because of personal injuries to Mr. Crenwelge. The general damages for personal injuries to Melanie consumed the entire $10,000 limit of liability on both policies, and there is no question in this regard. However, Mr. Crenwelge received only the sum of $6,500 in general damages and he contends that since he had to pay all of the medical expenses for himself and Melanie, totaling $3,510.20, and that his wife lost her wages and sick leave which were assets of the community, he is entitled to recover these items up to the limit of $10,000 on both policies. And, as stated above, he of course contended that he was entitled to a total of $1,000 for his own medical payments benefits, an argument which we have rejected above.
We think the policy provisions are clear and that they limit recovery to the damages for personal injuries, including pain and suffering, medical expense, loss of wages, etc. sustained by each person in each accident. Under this construction, Mr. Crenwelge is entitled to recover his general damages of $6,500 and his own medical expenses of $1,127.70. We realize this results in double payment of $500 of plaintiff's medical expense. In Gunter v. Lord, 242 La. 943, 140 So.2d 11 (1962), our Supreme Court held that injured automobile passengers, who were paid their medical expenses under medical payments provisions of the policy, could not again be awarded the same medical expenses in a tort action brought directly against the insurer under the same policy. But the court pointed out that double payment would be permissible "were the injured party wholly or partly indemnified for hospital or medical care by insurance effected and paid for by him or through some other source, and toward which the wrongdoer did not contribute." Later jurisprudence follows this statement in Gunter, and holds that where medical payments are made under one policy, the liability insurer under another policy is not entitled to credit against its liability for such payments, Jeffers v. United States Fidelity & Guaranty Company, 146 So.2d 429 (La.App., 3rd Cir. 1963); American Indemnity Company v. New York Fire & Marine Underwriters, Inc., 196 So.2d 592 (La.App., 1st Cir. 1967); Nunez v. Modern Woodcraft Company, La.App., 197 So.2d 339 and Hall v. State, Department of Highways, 213 So.2d 169 (La.App., 3rd Cir. 1968).
We find no case dealing with the precise situation presented here where plaintiff receives $500 in medical payments under his own policy and seeks double payment of *163 these expenses under the uninsured motorist clause. Nevertheless, under the uninsured motorist provisions of the policy, the defendant insurer becomes in effect the liability insurer of the uninsured motorist. Under this rationale, the above cited jurisprudence is applicable and the double payment of $500 of the medical expense is permissible.
However, plaintiff is not entitled to recover the medical expense for Melanie in excess of the $500 which we have already concluded he can recover under the medical payments provisions for her, since this would extend the uninsured motorist coverages beyond the $10,000 limitation. For the same reason, plaintiff is not entitled to recover for the loss of sick leave and loss of wages by Mrs. Crenwelge while she was nursing their daughter, since these were expenses incurred as a result of personal injuries to Melanie and not the personal injuries to Mr. Crenwelge. There is no claim for loss of personal wages by Mr. Crenwelge.
THE DECREE
For the reasons assigned, the judgment appealed is amended as follows: The award in favor of David Crenwelge individually and against the defendant, State Farm Mutual Automobile Insurance Company, for benefits under the uninsured motorists coverages, is reduced from the sum of $10,950 to the sum of $7,627.70 ($6,500 general damages plus $1,127.70 medical expense). The award to David Crenwelge against the defendant, State Farm Mutual Automobile Insurance Company, under the medical payments coverage is reduced to $500 each for plaintiff and his daughter, a total of $1,000, together with penalties of 12% on $1,000, and an attorney's fee of $500. Except as herein amended, the judgment is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed, as amended.