295 So.2d 201 (1974)
Audry Nell Wilson RASCOE et al., Plaintiffs-Appellants,
v.
Joe Lee WILBURN et al., Defendants-Appellees.
No. 4537.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1974.
*202 Stafford, Pitts & Stafford by John W. Scott, Alexandria, for plaintiffs-appellants.
Gist, Methvin & Trimble by David A. Hughes, Gold, Hall, Hammill & Little by Leo Gold, Alexandria, for defendants-appellees.
Before CULPEPPER, MILLER and WATSON, JJ.
MILLER, Judge.
Plaintiffs Audry Wilson Rascoe, Sharon Wilson Wilkinson, and Joann Wilson Malone appeal the trial court's summary judgment in favor of their uninsured motorist insurer, defendant State Farm Mutual Automobile Insurance Company. We reverse and remand.
Plaintiffs are daughters of Sherman O. Wilson who was killed in an automobile accident caused by Joe Lee Wilburn. Wilson was driving his 1972 pickup truck when it was struck by an automobile driven by Wilburn. Wilburn was insured by Stonewall Insurance Company in the amount of $5,000 for bodily injury to one person and $5,000 property damage per accident. State Farm, Wilburn, and Stonewall were named defendants.
Wilson had two policies with State Farm, one on the 1972 pickup truck and one on a 1968 truck. Each policy was in the amount of $5,000/$10,000, and each had uninsured motorist protection in a like amount. Sharon Wilson Wilkinson also had a $5/10 policy with a like amount of uninsured motorist coverage issued by State Farm. Plaintiffs alleged that they were members of the same household, and that their father was deemed an insured under terms of the uninsured motorist coverage in all policies.
State Farm filed for summary judgment, alleging generally that the petition disclosed no genuine issue of material fact as to its liability, and specifically that since Wilburn was insured, the terms and conditions of mover's policies deny recovery. State Farm's motion was predicated on the notion that its uninsured motorist coverage was not extended to damages caused by the owner or operator of an insured automobile.[1]
The trial judge, without written reasons, granted summary judgment pursuant to State Farm's motion.[2] After plaintiffs' motion for appeal and the appeal bond were filed, the trial judge handed down *203 written reasons stating that his judgment was erroneous. Since he no longer had jurisdiction he could not correct his error.
The three issues presented by opposing counsel are considered in the order discussed by counsel.

ISSUE NUMBER 1.
Plaintiffs contend that the uninsured motorist coverages of several insurance policies available to the same insured, although issued on different vehicles, should be stacked. Plaintiff relies upon several decisions, both of the Supreme Court and this circuit. State Farm relies upon the following exclusionary clause in its uninsured motorist coverage:
EXCLUSIONS. This policy does not apply under Part IV: (a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile; ....
The term "insured automobile" is defined in the State Farm policies in pertinent part as:
(a) An automobile described in the policy for which a specific premium charge indicates that coverage is afforded.
This question was considered in Roberie v. State Farm Mutual Automobile Ins. Co., 291 So.2d 923 (La.App. 3 Cir. 1974 No. 4438). The identical policy provisions and factual circumstances were considered. Roberie was injured while driving one automobile and owned another automobile, both of which had uninsured motorist protection. State Farm there urged the same exclusionary clauses. We allowed "stacking" of both policies and denied effect to the exclusionary clause.
This was based upon Crenwelge v. State Farm Mutual Automobile Insurance Company, 277 So.2d 155 (La.App. 3 Cir. 1973). In Crenwelge we relied upon the rationale utilized in Graham v. American Casualty Co. of Reading, Pa., 261 La. 85, 259 So.2d 22 (1972) and Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972). Graham held that standard "pro rata" clauses are invalid where they serve to reduce recovery on individual policies below the $5,000 statutory minimum. The Deane case resulted in the same ruling on the validity of the standard "excess" clause. We resolved the conflict between the rationale implicit in the Graham and Deane cases and the exclusionary clause in Crenwelge at 277 So.2d 158.
In Crenwelge and Roberie, we did not place primary significance on the fact that Graham and Deane both purported to strike clauses which have the effect of reducing the minimum statutory coverage in cases where coverage under uninsured motorist protection is available. In effect, we decided that the disputed exclusionary clause had the effect of reducing the minimum statutory coverage. In Crenwelge and Roberie and in the instant case plaintiff motorists had uninsured motorist protection available from multiple sources and were injured while driving an insured vehicle. We have decided that the exclusionary clause in question could not have the effect of completely excluding coverage where by mere happenstance plaintiff was injured while driving a vehicle insured under another policy. We thus made a policy decision in refusing to apply that specific exclusionary clause, a policy decision based upon the rationale of Graham and Deane that insurers who have undertaken to provide uninsured motorist protection are held liable to the full extent required by the statutory minimum provisions.
It is of no moment whether the obligation to comply with those provisions is attempted to be avoided through the operation of reduced exposure via other insurance clauses or through complete avoidance via the particular exclusionary clause urged as a defense in Crenwelge, Roberie, and in this case. The decision has been made, and we follow that decision in the instant case, limiting the effect of our *204 judgment to the particular exclusionary clause here involved.
State Farm points to Rushing v. Allstate Insurance Company, 216 So.2d 875 (La. App. 1 Cir. 1968), which upheld the exclusionary clause in question. We distinguish that case in two significant respects. First, and most importantly, the vehicle which plaintiff was operating at the time of the accident was not a described insured vehicle in a policy owned by plaintiff. There was only one policy owned by plaintiff, it being issued upon another vehicle owned by plaintiff. Second, the First Circuit has stated in Thomas v. Nelson, 280 So.2d 290 (La.App. 1 Cir. 1973) that it may reassess its position on that issue.
Also argued in this portion of counsels' arguments is the effect to be given the policy issued Sharon Wilson Wilkinson. We defer momentarily our consideration of that issue.

ISSUE NUMBER 2.
Plaintiffs argue that an uninsured motor vehicle includes a motor vehicle with automobile liability coverage in an amount less than the uninsured motorist coverage available to the insured tort victim. This argument is based upon a 1972 amendment to LSA-R.S. 22:1406(D). We are thus confronted with the perplexing problem of deciding whether an insured motorist can be an uninsured motorist.
Act 137 of 1972 has as its stated purpose "[t]o amend and reenact paragraphs (1) and (2) of Subsection D of Section 1406 of Title 22 of the Louisiana Revised Statutes of 1950, to provide with respect to uninsured motorist coverage to permit an insured to increase coverage, to provide an additional definition of uninsured motor vehicle and otherwise to provide with respect thereto." Prior to 1972, Sub-section D pars. 1 and 2 read as follows:
"D. (1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.
"(2) For the purpose of this coverage, the term `uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency."
After passage of Act 137 of 1972, those portions of the statute read with added language italicized:
D. (1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because *205 of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.
(b) Any insurer delivering or issuing an automobile liability insurance policy referred to herein, shall also permit the insured, at his request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount not in excess of the limits of the automobile liability insurance carried by such insured.

(2) (a) For the purpose of this coverage, the terms "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.
(b) For the purposes of this coverage the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the uninsured motorist coverage carried by an insured.

Plaintiffs argue that the amendment defined an uninsured motorist as one who is either in fact uninsured OR one who is insured in an amount less than the uninsured motorist coverage available to the insured tort victim. State Farm argues that the legislative intent is that an insured tort-feasor shall be considered an uninsured motorist only if the uninsured motorist coverage provided in the policy covering the vehicle operated by the insured at the time of the accident is greater than the liability insurance applicable to the tortfeasor.
Both counsel rely upon White v. Nationwide Mutual Insurance Company, 361 F.2d 785 (4 Cir. 1966), as authority for their respective positions. Virginia's uninsured motorist statute was there in question. It too provided for underinsured motorists. By terms of the statute, a vehicle was deemed uninsured if covered by less than $15,000 insurance for one person. The negligent motorist had liability coverage of $10,000 for one person. The case did not involve multiple uninsured motorist coverages available to plaintiff, since the only policy in question was the one available to plaintiff in the amount of $15,000. The case was not concerned with stacking and is not apposite to the issue now before us. We are aware of no cases interpreting the amended language of our statute. We must interpret our statute on the basis of its terms.
The amendment had as its avowed purpose to permit an insured motorist to increase his uninsured motorist protection commensurate with the liability coverage he has afforded the general public AND to provide an additional definition of an uninsured motorist. The decision rests on the closeness of the connection between these two avowed purposes. Should only those who have exercised the statutory option to increase their uninsured motorist coverage be deemed entitled to benefit from the expanded definition of uninsured motorists?
If the intent of the legislature were to condition application of the definition of uninsured motor vehicle contained in 1406, subd. D(2)(b) upon the exercise of the option by the injured victim with uninsured motorist protection, that intent was not so stated. Had the legislature wished to limit availability of the additional definition of uninsured motorist to those who exercised the statutory option, it could have so stated. Rather, it chose to introduce the concept of underinsured motorists to Louisiana by expressly recognizing that concept in 1406, subd. D(1)(a) and by defining such an underinsured motor vehicle as an uninsured motor vehicle in 1406, subd. D(2)(b). Significant is the location of the option provision in 1406, subd. D(1)(b) *206 and the expanded definition in 1406, subd. D(2)(b). No cross reference or other mention is made to condition the definition in 1406, subd. D(2)(b) upon exercise of the 1406, subd. D(1)(a) option.
State Farm's suggestion as to legislative intent is not supported. It suggests that the expanded definition is applicable only in cases where the uninsured motorist coverage provided in the policy covering the vehicle operated by the insured at the time of the accident exceeds the liability limits on tortfeasor's vehicle. This interpretation would deny protection to a person having uninsured motorist protection unless injured while driving his insured vehicle. Graham involved injury to a guest passenger and would not support this result. If the legislature intended to place such a restriction upon application of the new definition, it did not express it. It chose not to exclude such situations as those envisioned by Graham and Deane. We do not now add conditions which the legislature chose not to impose. We construe the terms "uninsured motorist coverage carried by an insured" in the new definition of uninsured motorists to include total uninsured motorist coverage properly available to the insured tort victim.

ISSUE NUMBER 3.
This relates to allocation of damages among defendants and the problem of subrogation. State Farm correctly points out that these issues are not properly before the court.
This case comes before us pursuant to the granting of State Farm's motion for summary judgment. A decision on the matters of subrogation and allocation of damages among defendants is premature. Only by trial on the merits can damages be ascertained.
We likewise withhold judgment on the matter of the policy issued to Sharon Wilson Wilkinson. There exists a genuine issue of material fact as to whether Mr. Wilson was an insured under the terms of Sharon's policy.
The trial court judgment granting defendant State Farm's motion for summary judgment is reversed. The case is remanded for further proceedings. Costs of this appeal are assessed to defendant appellee State Farm.
Reversed and remanded.
NOTES
[1] The policies provide that coverage is afforded only where the insured is entitled to recover "damages from the owner or operator of an uninsured automobile." Uninsured automobile is defined as:

(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or becomes insolvent within one year after such accident or ...
[2] The same judgment denied plaintiffs' motion for summary judgment. Plaintiffs' motion asked for judgment against all defendants.