327 So.2d 505 (1976)
Joseph RAGGIO, Plaintiff-Appellee,
v.
VOLKSWAGEN INSURANCE COMPANY et al., Defendants-Appellants.
No. 5342.
Court of Appeal of Louisiana, Third Circuit.
February 18, 1976.
*507 Cook, Clark, Egan, Yancey & King by Steven H. Beadles, Shreveport, for defendant-appellant.
Lunn, Irion, Switzer, Johnson & Salley by Jack E. Carlisle, Jr., Shreveport, for defendant-appellee.
Makar & Whitaker by John B. Whitaker, Gerard F. Thomas, Jr., Natchitoches, for plaintiff-appellee.
Before MILLER, WATSON and CUTRER, JJ.
MILLER, Judge.
Defendant Reliance Insurance Company appeals an award of $1,741.90 to plaintiff Joseph Raggio made under Reliance's uninsured motorist coverage. Alternatively it appeals the dismissal of its demand for contribution by another uninsured motorist carrier, defendant Safeco Insurance Company. Finally, it appeals the dismissal of its claim for indemnity from the underinsured tortfeasor, defendant Eugene LaCour. We affirm all holdings except the denial of Reliance's third party demand against the underinsured tortfeasor.
James LaCour, minor son of defendant Eugene LaCour, ran a stop sign while entering Highway 1 from a side road. Plaintiff Joseph Raggio was a passenger in the pickup truck which struck the LaCour automobile. The trial court found LaCour's negligence to be the sole legal cause of the accident and the appeal does not question that determination.
The owner of the pickup truck in which Raggio was riding carried uninsured motorist coverage with defendant Reliance with $5,000 per person limits of liability. Raggio owned an automobile on which he carried uninsured motorist coverage with defendant Safeco Insurance Company with $5,000 per person limits of liability.
The issues are:
1) Is the award for general damages manifestly excessive?
2) Under the 1972 amendment to LSAR.S. 22:1406, will an "insured" motorist be considered "uninsured" by virtue of being "underinsured" when the limits of uninsured motorist coverage carried by plaintiff did not exceed tortfeasor's liability limits? And can plaintiff "stack" the uninsured motorist limits of a policy carried by him with similar limits on a policy not carried by him to meet the criteria for application of uninsured motorist coverage?
3) Can an insured under an uninsured motorist policy recover from his insurer sums which he is not legally entitled to recover from the tortfeasor?
4) If "stacking" is allowed for uninsured motorist coverage, does Reliance's other insurance "excess" clause apply or should the loss be prorated between the uninsured motorist coverage carriers?

QUANTUM
Raggio sustained a compound comminuted fracture of the nasal septum, extensive intranasal lacerations, a full thickness laceration of the lip, floor of the nose and the left cheek, together with multiple larcerations, bruises and abrasions about the head, shoulders, neck, chest, arms, and hands. The surgical repair was successful but some visible scarring remains. The trial court awarded $5,000 as general damages and $1,741 in special damages. LaCour's insurer, defendant Volkswagen Insurance Company, paid the limit of its $5,000 liability and is not before us.
*508 Since the judgment against Reliance is a relatively small portion of the award, Reliance seeks to avoid liability at the outset by contending the $5000 award for general damages was manifestly excessive. Appellant contends the award is "twice the amount" of prior awards in similar cases. Raggio has cited prior awards of larger sums in what he contends to be similar cases.
In reviewing trial court awards we are admonished to require appellant to establish an apparent abuse of discretion on the specific facts of the case. Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974); Bitoun v. Landry, 302 So.2d 278 (La.1974). Although we might have made a different award, a review of the record does not indicate an abuse of the trial court's much discretion. Bradford v. Brewton Butane Company, 319 So.2d 892 (La.App. 3 Cir. 1975); Clayton v. Wiley, 325 So.2d 642 (La.App. 3 Cir. 1975).

UNDERINSURED MOTORIST
Reliance also contends its uninsured motorist coverage is inapplicable since the tortfeasor had insurance with the same limits that Reliance had on its uninsured motorist coverage. Volkswagen Insurance had $5000 bodily injury coverage on LaCour's vehicle which it paid. Since Reliance's uninsured motorist limits are in the same amount, Reliance contends LaCour was not underinsured.
Raggio contends Reliance's $5000 limit can be stacked with the $5000 uninsured motorist coverage available to him through Safeco's policy covering his own automobile. By stacking he claims to have $10,000 in uninsured motorist coverage available and LaCour is underinsured in the amount of $5,000.
The term "stacking" is used when uninsured or underinsured coverages under multiple policies or multiple vehicles covered under one or more policies are cumulated to determine coverage available to the injured party. At least three different problem areas are involved:other insurance provisions, exclusionary clauses, and the definition of an underinsured motorist.
Graham v. American Casualty Co. of Reading, Pa., 261 La. 85, 259 So.2d 22 (1972) is the fountainhead. Graham was a guest passenger in a vehicle involved in an accident. There was no liability insurance covering the vehicle at fault and no uninsured motorist coverage on the vehicle in which Graham was riding. However, Graham had a policy on his own automobile and as a member of the household was an insured under two policies owned by his father. He was awarded damages of $25,000 and attempted to recover $5,000 on each of the three uninsured motorist policies. The insurance companies contended the policy provisions restricted their liability by reducing their coverage proportionately with the coverage afforded by other insurance (the pro-rata clauses). Therefore they contended contribution of all three should be limited to the $5,000 coverage required by the Motor Vehicle Safety Responsibility Law. This contention was rejected and the court refused to reduce the mandatory minimum coverage of each policy.
This result was predicated on an interpretation of LSA-R.S. 22:1406. The minimum uninsured motorist coverage must be included in Louisiana policies and is supplemental to liability insurance. The court found the statute to embody public policy and refused to give effect to provisions of the insurance contract which would bring about a contrary result.
Graham was allowed to recover "the minimum" from all three insurers which collectively was more than the minimum liability the uninsured motorist was required to carry.
In Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972) another type of other insurance provision was considered. Plaintiff *509 was a guest passenger in a vehicle involved in a collision with an uninsured motorist. The vehicle in which he was riding had uninsured motorist coverage through two policies totaling $10,000 ($5,000 each). Plaintiff also had uninsured motorist coverage in the amount of $10,000 on his personal automobile as required by Florida law. The Florida insurer contended the "excess" provision in its policy required the Louisiana insurance to be primary coverage and since that satisfied the $10,000 minimum required by Florida law, the Florida insurer should have no liability. It was held that Florida law, like Louisiana law, would not recognize provisions reducting the minimum coverage required by statute. It was reasoned there where two or more policies have actually been issued and premiums for uninsured motorist coverage paid, the mandatory minimum coverages required by statute were available for damage claims under each policy.
This line of reasoning was followed by this court's holding "minimum coverage" to be available as to coverage afforded each vehicle even if there was only one insurance policy. Wilkinson v. Fireman's Fund, 298 So.2d 915 (La.App. 3 Cir. 1974).
The second problem was encountered in Crenwelge v. State Farm Mutual Automobile Insurance Company, 277 So.2d 155 (La.App. 3 Cir. 1973). The provision of the insurance policy at issue was an exclusion. Although the literal meaning of the terms of most exclusionary clauses would result in avoiding coverage without regard to the availability of other insurance, the cases in point involved recovery under other insurance.
Crenwelge had uninsured motorist coverage through a policy on another vehicle he owned as well as the one he was driving when injured by an uninsured motorist. The exclusion was to apply "to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile." Under terms of the policy insured automobiles must be described in the policy. The insurance company therefore argued that Crenwelge was excluded from coverage. The argument was rejected because, under the facts, the effect of the exclusionary clause would eliminate the minimum coverage mandated by statute.
We note that courts have also rejected policy exclusions which required written consent from the company before settlement could be effected with an insured co-tortfeasor. Hebert v. Green, 311 So.2d 223 (La.1975). The exclusion of amounts paid under the workmen's compensation law have likewise been rejected. Landry v. State Farm Mutual Automobile Insurance Company, 320 So.2d 254 (La.App. 3 Cir. 1975).
In summary, courts have consistently resisted attempts to reduce or avoid the statutorily required $5,000 minimum coverages paid for each uninsured motorist coverage.
LSA-R.S. 22:1406 was amended in 1972, adding to D(1)(a) the words "or underinsured" and adding clauses D(1)(b) and D(2)(b). D(1)(b) permits the insured to purchase additional uninsured motorist coverage equal to the limits of liability coverage carried by him. D(2)(b) defines "uninsured motorist" to include "underinsured motorist."
In addition to the question as to whether "stacking" would be applied in the case of "underinsured" as well as "uninsured" motorists, a new issue emerged. Should the "underinsured" status be determined on the basis of coverage afforded individually, policy by policy, or on the basis of all coverages collectively?
This issue was presented in Rascoe v. Wilburn, 295 So.2d 201 (La.App. 3 Cir. 1974). In Rascoe, plaintiff's father was fatally injured by a motorist with $5,000 personal injury liability coverage. As members of the household plaintiffs contended they were entitled to recover by virtue of uninsured motorist coverage under *510 three policies, two owned by the father covering his two vehicles and one owned by his daughter who was a co-plaintiff. On the basis of the Crenwelge decision, this court rejected defendants' argument that coverage could not be "stacked."
Defendants next contended they had no exposure because there was liability insurance equal to the coverage afforded by each uninsured motorist carrier. They argued the legislature intended to condition the expanded coverage on the insured's exercise of his option to elect increased coverage. After an analysis of the relation of the wording of the amendment in relation to the statute, this court found coverage had been expanded. It was reasoned that if the legislature intended to condition application of the definition of uninsured motor vehicle contained in § D(2)(b) upon the exercise of the option [contained in D(1)(b)] by the injured victim with uninsured motorist protection, that intent was not so stated. Instead of so stating, the legislature chose to introduce the concept of underinsured motorist to Louisiana.
Subsequently in Barbin v. United States Fidelity and Guaranty Company, 302 So.2d 631 (La.App. 3 Cir. 1974), we were again presented with the issue of cumulation of uninsured motorist coverages to allow recovery of minimum limits per vehicle covered. The insurer's defense was grounded on language in the 1972 amendment which this court believed to limit this coverage so that it can not exceed the limits of automobile liability coverage carried by the insured. The Supreme Court reversed. Barbin v. United States Fidelity & Guaranty Co., 315 So.2d 754 (La.1975).
Appellants insurers rely on different policy languagethe term here presented is "carried by the insured" rather than "not in excess" which was before the court in Barbin. But the result they seek is the same. They wish for the statute to be interpreted with reference only to premiums paid by the injured insured. The Barbin decision requires us to reject the contention because this is not the apparent legislative intent in adopting the statute.
Reliance further contends "carried by" means "bears the charges of." Reliance reasons "carried by" establishes the legislative intent to restrict underinsured coverage to insurance which the injured insured has purchased. Reliance reads the statute to say "personally carried by." But the statute's language is not that narrow.
This interpretation is inconsistent with the common principal of all interpretations of uninsured motorist coverage requirements:for each coverage for which a premium is paid, public policy requires the minimum limits to be in force. Coverage obtained by the owner of the vehicle for the benefit of passengers in his insured vehicle is within the intent of coverage "carried by" the passenger.
Reliance's position is also inconsistent with our decision in Rascoe. Reliance's interpretation would deny protection to a person having uninsured motorist protection unless that person is injured while driving his insured vehicle. Also uninsured motorist coverage for a passenger under the vehicle's policy would depend not on the law or policy provision, but upon the fortuitous circumstance of the limits of an unrelated policy.
Reliance argues that Doucet v. Insurance Company of North America, 302 So.2d 731 (La.App. 3 Cir. 1974) supports their position. But the court there distinguished Rascoe as resulting from the statute's effect "where the liability coverage was less than the available uninsured motorist coverage." We distinguish Doucet where there was no uninsured motorist coverage available in excess of the liability coverage.
In the present case, the insurance companies wish to assert their $5000 policy limits separately and reason that their policy does not exceed the tortfeasor LaCour's *511 $5,000 liability coverage. They wish to read their policy limits to create an exclusion of coverage where the liability policy does not have lower limits. This is not the statutory language. The legislature could have used the term "limits" had this been the legislative intent. Instead the term "coverage" was used.
Premiums are paid for uninsured motorist coverage to benefit driver and passengers as well. The rationale of the uninsured motorist and underinsured motorist decisions is that where premiums are paid for coverage, each coverage will be given full effect. Under this rationale, where multiple premiums are paid, the coverages are to be cumulated for the benefit of the injured insured.
As a guest passenger, Raggio is an insured and the premiums paid for uninsured motorist coverage on the pickup in which he was riding were paid for his benefit. He paid uninsured motorist premiums on his personal vehicle for his own benefit. The statute requires that uninsured motorist coverages be cumulated for his benefit. The motorist is underinsured where the liability insurance available is less than the total uninsured motorist coverage available to the insured tort victim. Rascoe, supra; Phillips v. Barraza, 320 So.2d 587 (La.App. 4 Cir. 1975). We therefore reject this assignment of error.

INDEMNITY
The trial court based its denial of the third party claim against LaCour on his impecunious condition. The son who caused the accident had no property and only minimum wages, and the father was $77,000 in debt. The trial judge found both to be "judgment proof."
The trial court may consider defendants' impecunious condition in assessing damages. See Urk v. Southern Farm Bureau Casualty Ins. Co., 181 So.2d 69 (La.App. 2 Cir. 1965), and the extensive citations at 70, 71. However the trial judge abused his discretion in denying all liability on that finding. The tortfeasor's inability to satisfy a judgment is a factor in mitigation to lessen damages but not a means of escape. LaCour was employed at the time of the accident and had been employed at the same job for eighteen years. He had some properties and the record does not show to what extent his debts exceed his assets. The amount at issue, $1741.90, does not seem unduly burdensome.

CONTRIBUTION
On the issue of contribution between the two uninsured motorist carriers, both Reliance (the uninsured motorist carrier on the car in which Raggio was riding) and Safeco (the uninsured motorist carrier on Raggio's own car) have practically identical provisions with respect to other insurance. The relevant provisions state:

Other Insurance: With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under the Protection Against Uninsured Motorists section shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and SAFECO shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.
*512 In Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972) similar provisions were interpreted to require an insured who is injured while occupying a non-owned automobile must first look to the insurer of the automobile he occupies as "primary" insurer. 260 So.2d at 670, 1. The court voided the excess clause because it was in conflict with the minimum coverage requirements of law. Since the amount here at issue is less than the applicable policy limits, the trial court properly held Reliance liable for the entire $1741.90 as Reliance provided the uninsured motorist coverage on the vehicle in which Raggio was riding.
Reliance argues that if their coverage is held to be primary, they are entitled to credit for the amount paid on the judgment by LaCour's insurer. We do not reach the question as to whether the reduction of limits clause of the uninsured motorist coverage applies to payments made under liability coverage of another policy, because the effect would be to reduce the uninsured motorist coverage limits below the statutory minimum. This result has been rejected when courts refused to apply such clauses as between uninsured motorist and uninsured motorist coverages. We therefore refuse to apply the reduction in limits clause (the pro-rata clause) as between liability and uninsured motorist coverage.
We reverse the trial court's rejection of Reliance's third party demand against Eugene LaCour. Reliance Insurance Company is awarded judgment against third party defendant Eugene LaCour in the amount of Seventeen Hundred Forty-One and 90/100 ($1741.90) Dollars together with legal interest from judicial demand until paid. Court costs at trial and on appeal are taxed half to Reliance Insurance Company and half to Eugene LaCour. All other holdings of the trial court are affirmed.
Affirmed in part; and in part reversed and rendered.