382 So.2d 1216 (1980)
Mary Hall WILLIAMS and Willet Williams, Her Husband, Petitioners,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Foreign Corporation, Respondent.
No. 52115.
Supreme Court of Florida.
April 17, 1980.
Rehearing Denied May 27, 1980.
*1217 Steven C. Ruth of Piper, Esteva, Pennell, Karvonen & Lewis, St. Petersburg, for petitioners.
Stephen C. Chumbris and Charles S. Carrere of Harrison, Greene, Mann, Rowe, Stanton & Mastry, St. Petersburg, for respondent.
PER CURIAM.
By petition for writ of certiorari we have for review the decision of the District Court of Appeal, Second District, in Williams v. Hartford Accident and Indemnity Co., No. 76-1363 (Fla. 2d DCA June 29, 1977), which directly conflicts with Government Employees Insurance Co. v. Butt, 296 So.2d 599 (Fla. 3d DCA 1974). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
On August 13, 1973, Mary Hall Williams was injured in an automobile accident caused by the negligence of another driver. Mrs. Williams and her husband reached a settlement with that driver's insurer for $10,000, the full amount of his liability coverage but less than Mrs. Williams' claimed damages. The Williamses then sought additional *1218 compensation from their uninsured vehicle coverage by suing their insurer, Hartford Accident and Indemnity Company. Hartford moved for and won a final judgment on the pleadings. The Williamses appealed. The District Court of Appeal, Second District, affirmed per curiam without an opinion.
The issue before this Court is whether the petitioners' uninsured vehicle coverage was available to the extent it was greater than the limits of the tortfeasor's liability insurance.
A preliminary explanation of the problem of uninsured and underinsured vehicle coverage is in order. Since 1961 Florida law has required automobile liability insurers to include uninsured vehicle coverage in their policies, subject to express refusal by any of the insured named in the policy. See § 627.0851, Fla. Stat. (1961). The essential purpose of such coverage is to better assure full compensation for accident victims under the policy regardless of how well or how poorly the tortfeasor provided for his liability. But the tortfeasor had to be completely uninsured before such coverage was required to be applicable. Even if an accident victim's recovery from the tortfeasor's insurer was less than his damages, the statute did not originally require uninsured vehicle coverage to be available for further compensation. Golphin v. Home Indemnity Co., 284 So.2d 442 (Fla. 1st DCA 1973); Continental Insurance Co. v. Wallace, 233 So.2d 195 (Fla. 3d DCA 1970); Insurance Co. of North America v. Strauss, 231 So.2d 548 (Fla. 2d DCA 1970); Gordon v. Phoenix Insurance Co., 242 So.2d 485 (Fla. 1st DCA 1970). In that instance, the tortfeasor was, in insurance parlance, an "underinsured motorist," not an "uninsured motorist."
Some policies provided underinsured vehicle coverage as part of uninsured vehicle coverage. Generally, such policies guaranteed full recovery for damages up to the dollar limits of such "uninsured/underinsured vehicle coverage" regardless of whether or not the tortfeasor was insured or how much insurance he carried. But policies that provided only the statutorily prescribed form of uninsured vehicle coverage did not guarantee a full recovery because the effectiveness of that coverage depended on the happenstance of whether or not the tortfeasor was insured. If the tortfeasor was insured, then there could not be any recovery from the uninsured vehicle coverage.
Few automobile owners were aware of the difference between "uninsured vehicle coverage" and "underinsured vehicle coverage," and too many learned of the difference only in the context of an automobile accident. Suppose that accident victims under a policy with $50,000 "uninsured vehicle coverage" in the form prescribed by statute suffered damages in that amount. If the tort-feasor was uninsured, his victims would have full compensation. But if the tortfeasor carried, say $10,000 of liability insurance, then the uninsured vehicle coverage would not apply. Instead, the tortfeasor's victims would have an insured recovery of only the $10,000 available from the tortfeasor's insurer, substantially less than their damages and their apparent $50,000 worth of protection from the negligence and financial irresponsibility of other motorists. Ironically, the accident victims would have been better off if the tortfeasor had violated the financial responsibility law by not carrying insurance.
The petitioners' policy with Hartford is governed by section 627.727, Florida Statutes (1971). The portions of the two subsections relevant to this case read as follows:

The coverage provided under this section shall be excess over but shall not duplicate the benefits available to an insured under any workmen's compensation law, disability benefits law or any similar law; under any automobile liability or automobile medical expense coverages; or from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident ... . [Emphasis supplied.]

*1219 (2) For the purpose of this coverage the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.
The italicized portion was added by chapter 71-88, Laws of Florida, effective for policies issued or renewed after January 1, 1972, which includes the petitioners' policy. The petitioners contend that the statute is clear and does not require or allow judicial construction: the phrase "under any automobile liability... coverages" must include any recovery from the tortfeasor's insurer and, therefore, uninsured vehicle coverage operates as underinsured vehicle coverage. The petitioners also rely on an unreported federal decision, Townsley v. Hartford Accident and Indemnity Co., No. 74-49 Civ. J-S (M.D.Fla., Jan. 21, 1975), and on comments in other cases suggesting support for their position. See State Farm Mutual Automobile Insurance Co. v. Anderson, 332 So.2d 623 (Fla. 4th DCA 1976); Stuyvesant Insurance Co. v. Johnson, 307 So.2d 229 (Fla. 4th DCA 1975); Government Employees Insurance Co. v. Butt, 296 So.2d 599 (Fla. 3d DCA 1974).
The respondent counters by arguing that it was chapter 73-180, Laws of Florida, that first required underinsured vehicle coverage. Except for minor punctuation changes, the "excess over" provision of subsection (1) of section 627.727, Florida Statutes (1971) (quoted above) was not altered by that amendment. But subsection (2) was substantially changed to read as follows:
627.727 Automobile liability insurance; uninsured vehicle coverage; insolvent insurer protection. 
(2) For the purpose of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
(a) Is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency; or
(b) Has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist's coverage.
codified as § 627.727(2), Fla. Stat. (1973). Thus the 1973 amendment clearly required uninsured vehicle coverage to also function as underinsured vehicle coverage. The respondent therefore believes that underinsured motorist coverage was not mandated prior to the enactment of chapter 73-180, and discusses a number of cases in which courts adopted that position: Castaneda v. State Farm Mutual Automobile Insurance Co., 348 So.2d 1231 (Fla. 3d DCA 1977); American Fire and Casualty Co. v. Dawson, 320 So.2d 38 (Fla. 2d DCA 1975); Summers v. Jackson, 307 So.2d 235 (Fla. 4th DCA 1975). Because the tortfeasor in this case was insured and the petitioner's accident took place before the 1973 amendment went into effect, the respondent concludes that the petitioners' uninsured vehicle coverage is not available to them. Our perusal of the case law in this area uncovered two more recent cases in which courts held that underinsured vehicle coverage was not required until chapter 73-180. York Insurance Co. v. Becker, 364 So.2d 858 (Fla. 2d DCA 1978); Coney v. Reserve Insurance Co., 358 So.2d 261 (Fla. 3d DCA 1978).
Section 627.727, Florida Statutes (1971), governed the policy at issue here and is the prime authority for determining whether uninsured vehicle coverage is available in this case. We find that the "excess over" provision added by chapter 71-88 required uninsured vehicle coverage to also operate as underinsured vehicle coverage.
The concepts of uninsured and underinsured are so closely related that the legislature's failure in chapter 71-88 to use the term "underinsured" or delete earlier nominal references to "uninsured vehicle coverage" does not provide any inference that the term "uninsured" is to be narrowly *1220 construed. In any event, the "excess over" provision controls because it is the later and more specific expression of legislative will. Cable-Vision, Inc. v. Freeman, 324 So.2d 149 (Fla. 3d DCA 1975); Albury v. City of Jacksonville Beach, 295 So.2d 297 (Fla. 1974); De Coningh v. City of Daytona Beach, 103 So.2d 233 (Fla. 1st DCA 1958); Johnson v. State, 157 Fla. 685, 27 So.2d 276 (1946).
Uninsured vehicle coverage is specified by section 627.727(1), Florida Statutes (1971) (quoted above), as available to the extent it is excess over but not duplicative of other recoveries, including "recovery from any automobile liability or automobile medical expenses coverages." Not only is the word "any" all-encompassing, but the term "automobile liability ... coverages" must refer primarily to the liability insurance of other motorists. By making "uninsured vehicle coverage" excess over any recovery from the tortfeasor's insurer, chapter 71-88 made such coverage also function as underinsured vehicle coverage.
The respondent is mistaken in believing that the clear mandate in chapter 73-180 for underinsured vehicle coverage establishes that such coverage was not required by section 627.727, Florida Statutes (1971). Ordinarily that reasoning would lead to the correct conclusions. But the timing and circumstances of an enactment may indicate it was formal only and served as a legislative clarification or interpretation of existing law, and thus such an enactment may even suggest that the same rights existed before it. See Overstreet v. Pollak, 127 So.2d 124 (Fla. 3d DCA 1961); Gay v. Canada Dry Bottling Co. of Florida, 59 So.2d 788 (Fla. 1952). We believe that the underinsured vehicle coverage provision of chapter 73-180 was intended by the legislature to clarify and secure from doubt a change in our state's automobile insurance laws that had been enacted shortly before through chapter 71-88.
To the extent that York Insurance Co. v. Becker, Coney v. Reserve Insurance Co., Castaneda v. State Farm Mutual Automobile Insurance Co., American Fire and Casualty Co. v. Dawson and Summers v. Jackson, supra, are inconsistent with this opinion, they are hereby disapproved.
The petitioners' uninsured motorist coverage was required by section 627.727(1), Florida Statutes (1971), to operate as underinsured motorist coverage. The decision of the District Court of Appeal, Second District, is quashed. The cause is remanded with instructions that the judgment of the trial court be reversed and the cause be further remanded to the trial court for additional proceedings consistent with this opinion.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, SUNDBERG and McDONALD, JJ., concur.