**Concetta CONNOLLY**

**v.**

**ROYAL GLOBE INSURANCE CO.**

Supreme Judicial Court of Maine.

Argued Nov. 15, 1982.

Decided Feb. 1, 1983.

Richardson, Tyler & Troubh, David O'Brien (orally), Harrison L. Richardson, Portland, for plaintiff.

Preti, Flaherty & Beliveau, Thomas R. Kolb (orally), Portland, for Royal Globe Ins. Co.

Berman, Simmons, Laskoff & Goldberg, P.A., Jack H. Simmons, Jeffrey Rosenblatt, Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

CARTER, Justice.

Both Concetta Connolly and Royal Globe Insurance Company appeal the judgment entered in the Superior Court, Oxford County granting to Connolly part of the relief she sought against Royal Globe. We address only the questions whether the injured party's uninsured motorist policies should be stacked for the purpose of determining the tortfeasor's underinsured status and whether the aggregated Royal Globe and Travelers policies should be reduced by the tortfeasor's liability coverage.

The parties have stipulated to the following facts. On July 17, 1977, a car driven by James Fitzgerald struck a car driven by Richard Connolly. Fitzgerald's negligence was a proximate cause of the accident. Concetta Connolly, the plaintiff, was a passenger in the Connolly car and sustained injuries in the accident. Her injuries equalled or exceeded the total of the limits of all available insurance coverage.

At the time of the accident, Fitzgerald had a liability policy from Fireman's Fund Insurance Company with a coverage limit of $20,000 per person. The Connollys had a policy from the Travelers Insurance Company with an uninsured motorist coverage limit of $50,000 per person. Mr. Connolly's employer had a policy from Royal Globe Insurance Company with an uninsured motorist coverage limit of $20,000; this policy applied to the plaintiff's accident. The plaintiff complied with all of the terms and conditions of these policies.

Connolly filed a complaint against Royal Globe and Travelers. Royal Globe sought to dismiss Connolly's complaint based, in part, upon the failure to state a claim. After a hearing in Superior Court, the justice determined that Fitzgerald was an underinsured motorist. According to the

justice, a tortfeasor is underinsured if the total of all the injured party's uninsured motorist policies is greater than the tortfeasor's liability coverage. Because the total of Connolly's Royal Globe and Travelers uninsured motorist policies was $70,000 and Fitzgerald had liability coverage of only $20,000, the court ruled that Fitzgerald was underinsured by $50,000.

The justice further determined whether the plaintiff could recover both the $70,000 under the Royal Globe and Travelers uninsured motorist policies and the $20,000 liability coverage under Fitzgerald's policy. The justice ruled that Royal Globe and Travelers were entitled to reduce their exposure by the amount available from the Fitzgerald policy, $20,000. Travelers and Royal Globe therefore jointly owed Connolly $50,000. The justice did not then determine the method by which their liability was to be shared.[1] Royal Globe subsequently filed an appeal and Connolly filed a cross-appeal.[2]

### I.

Royal Globe asserts that the justice erred in concluding that 24–A M.R.S.A. § 2902(1) (Supp.1982–1983) requires the stacking of Connolly's Royal Globe and Travelers policies for the purpose of determining whether Fitzgerald was underinsured. Royal Globe contends that the definition of "underinsured" under the statute requires that the Fitzgerald liability policy be compared to each one of Connolly's uninsured motorist policies separately rather than to her combined policies. Comparing the Royal Globe policy which provides $20,000 of coverage and the tortfeasor's liability policy of $20,000, Royal Globe concludes that with respect to its policy the tortfeasor was not underinsured and therefore Connolly should be prevented from recovering under the Royal Globe policy.

---

1. The parties subsequently filed a motion for judgment on a stipulation. The court determined the liability coverage to be apportioned between Royal Globe and Travelers. The justice entered judgment for Connolly against Travelers and Royal Globe for amounts that represent a 5/7 (× $50,000) payment for Travel-

ers and 2/7 (× $50,000) payment for Royal Globe. The justice also permitted the plaintiff to recover prejudgment interest.

2. Travelers filed a cross-appeal. Ultimately, the parties filed a stipulation of dismissal of Travelers' cross-appeal.

### Statutory Language

Title 24–A M.R.S.A. § 2902(1)[3] provides that no policy insuring against liability shall be issued unless coverage is provided for damages caused by operators of underinsured motor vehicles. Under section 2902(1), an underinsured motor vehicle is defined in part as "a motor vehicle for which coverage is provided, but in amounts ... *less than the limits of the injured party's uninsured vehicle coverage.*" (Emphasis added.) This statutory language does not explicitly indicate whether the Legislature intended the tortfeasor's coverage to be compared to each of the injured party's policies separately or to the injured party's combined policies. Royal Globe argues that if the Legislature intended to compare the tortfeasor's liability coverage to the aggregated uninsured motorist policies of the injured party, it would have used the plural *coverages,* rather than the singular *coverage.* Contrary to Royal Globe's assertion, however, coverage is a general term which could be interpreted to include several policies. Moreover, the plural of *limits* when read together with the singular of *coverage* further establishes that the statutory language does not clearly indicate the legislative intent. When the statutory language is ambiguous, the prior case law interpreting the statute and the statutory purpose must be examined to determine the legislative intent. *Jones v. Mulkey,* 620 S.W.2d 498 (Tenn.App.1981) (faced with issue whether four underinsurance policies should be stacked, court, rather than relying upon ambiguous statutory language, reasoned prior case law established a policy against stacking).

### Prior Case Law

We have discussed stacking in two cases. In *Wescott v. Allstate Insurance,* 397 A.2d 156 (Me.1979), the plaintiff was a passenger in a car which was involved in a two-car accident. The plaintiff settled for the $20,000 uninsured motorist policy limit covering the driver of the car she was riding in. The driver of the other car was uninsured. The plaintiff, subsequently, attempted to collect from her uninsured motorist coverage. The court permitted the plaintiff to recover the limits of both policies. The cause of action in *Wescott* arose before the statute was amended to include underinsured motorist coverage. *Wescott* involved the stacking of uninsured motorist coverage not the stacking of underinsured motorist coverage. Consequently, although not controlling, *Wescott* is consistent with the result we ultimately reach here.

In *Dufour v. Metropolitan Property & Liability Co.,* 438 A.2d 1290 (Me.1982), Dufour insured two vehicles under *one policy* and paid two premiums for $50,000 of uninsured motorist coverage on each vehicle. Dufour attempted to collect $100,000 but the Court refused to permit Dufour to stack the coverages. The Court reasoned that the policy clearly articulated the limit as $50,000. Because the Court relied upon the policy language, *Dufour* must be treated as a holding interpreting specific policy language and not as a judicial acceptance of a policy against stacking. The prior case law therefore has not established a policy for or against stacking.

---

**3.** The full text of title 24–A M.R.S.A. § 2902(1) provides:

No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle. The coverage herein required may be referred to as "uninsured vehicle coverage." For the purposes of this section, "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.

*Statutory Purpose*

In 1967, the Legislature originally enacted the uninsured vehicle coverage to require automobile liability insurers to provide uninsured vehicle coverage in the policies. P.L. 1967, ch. 93, § 1 (effective January 1, 1968).[4] The statute was subsequently revised and enacted as part of the comprehensive Insurance Code. P.L. 1969, ch. 132 § 1–2902.[5] For an accident victim who had purchased liability insurance, the Legislature intended to provide compensation in the event that the tortfeasor was uninsured. The statute, however, did not require coverage in the event that a tortfeasor had some liability insurance but not enough to cover the damages. The statutory coverage therefore depended completely upon the fortuity that the tortfeasor was uninsured. *See Williams v. Hartford Accident Insurance Co.,* 382 So.2d 1216, 1218 (Fla.1981). Ironically, under this statute, the victim was better off if he was injured by a tortfeasor who did not carry any insurance than if he was injured by a tortfeasor who carried inadequate coverage. 382 So.2d at 1218.

To prevent an injured party who had purchased uninsured motorist coverage from losing that protection in the event that the tortfeasor had some insurance but not enough to compensate adequately the injured person, the Legislature amended the statute to include underinsured motorist coverage. *See* P.L. 1975, ch. 437 § 1.[6] The statute now permits recovery if the tortfeasor has coverage in amounts less than the minimum limits required by law or less than the limits of the injured party's uninsured vehicle coverage. 24-A M.R.S.A. § 2902(1); *see* 29 M.R.S.A. § 787(1) (1978) (financial responsibility law requires motorist to carry $20,000 of liability insurance for bodily injury). Under this amendment, the Legislature intended to permit the insured injured person the same recovery which would have been available to him had the tortfeasor been insured to the same extent as the injured party. *See Dewberry v. Auto-Owners Insurance Co.,* 363 So.2d 1077, 1081 (Fla.1978) (citing *State Farm Mutual Automobile Insurance Co. v. Anderson,* 332 So.2d 623 (Fla.App.1976), *cert. denied,* 345 So.2d 428 (Fla.1977)). Connolly's total uninsured motorist coverage was $70,000, $20,000 under the Royal Globe policy and $50,000 under the Travelers policy. If Fitzgerald had been insured to the same extent as Connolly, Connolly would have recovered $70,000. To effectuate the purpose of the amendment, therefore, Connolly's policies must be aggregated to determine the tortfeasor's underinsured status. *See Anderson,* 332 So.2d 623, 625; *Raggio v. Volkswagon Insurance Co.,* 327 So.2d 505, 509–10 (La.App.1976); *see also St. Arnaud v. Allstate Insurance Co.,* 501 F.Supp. 192, 194 (S.D.Miss.1980); *United States Fidelity & Guaranty Co. v. Curry,* 395 So.2d 530, 531–32 (Fla.1981). *But cf. Jones,* 620 S.W.2d 498. We affirm the justice's conclusion that Fitzgerald was underinsured because Fitzgerald's coverage was less than Connolly's combined coverage.

II.

In a cross-appeal, Connolly argues that the justice improperly reduced the total of

4. P.L. 1967, ch. 93 § 1 provides:
   Uninsured motorist. Any policy insuring against liability resulting from or incident to the ownership, maintenance or use of a registered motor vehicle shall contain a provision for protection against uninsured motorists for bodily injury, within limits commensurate with the Financial Responsibility Law.

5. P.L. 1969, ch. 132 § 1–2902 provides:
   No policy insuring against liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance, or use of such uninsured or hit-and-run motor vehicle. The coverage herein required may be referred to as "uninsured vehicle coverage."

6. *See supra* note 3 at 934.

her uninsured vehicle coverage by the amount that she recovered under the tortfeasor's liability coverage. Connolly claims that because her total damages equalled or exceeded $90,000, her total recovery should be $90,000, $70,000 under her policies and $20,000 under the tortfeasor's liability coverage.

As discussed earlier, by amending the statute to include underinsured vehicle coverage, the Legislature intended to permit the injured party to recover the amount he would have received had the tortfeasor been insured to the same extent as the injured party. *See Dewberry*, 363 So.2d at 1081 (citing *Anderson*, 332 So.2d 623). The Legislature therefore intended to compensate the injured party for a deficiency in the aggregate amount of the tortfeasor's liability coverage. In this case, because Connolly had $70,000 of uninsured motorist coverage and Fitzgerald had $20,000 of liability coverage, Fitzgerald was underinsured by $50,000. The $50,000 of underinsured motorist coverage and the $20,000 of tortfeasor liability coverage provide Connolly with a total recovery of $70,000.

In addition, as cogently reasoned by the motion justice, this result is justified because the Legislature would not have intended to place a person injured by an underinsured tortfeasor in a better position than an injured party having the same insurance as the tortfeasor. *See also Dewberry*, 363 So.2d at 1081. For example, under Connolly's position, a person having uninsured motorist coverage of $25,000 injured by an underinsured tortfeasor with $20,000 of liability coverage could recover $45,000. A person with $20,000 of coverage injured by a tortfeasor with $20,000 of coverage would receive only $20,000 because under the statute the tortfeasor would not be underinsured. The justice properly reduced the aggregated uninsured motorist coverage by the tortfeasor's liability coverage. *See Dewberry*, 363 So.2d at 1081; *Raggio*, 327 So.2d at 508–11; *Vigneault v. Travelers Insurance Co.*, 118 N.H. 75, ——, 382 A.2d 910, 914 (1978).

The entry is

Judgment affirmed.

All concurring.