Jamie R. McALLASTER, Plaintiff,

v.

Victoria BRUTON, Government Employees Insurance Company, and City of Portland, Defendants.

Civ. No. 86–0025–P.

United States District Court,
D. Maine.

March 19, 1987.

John D. McKay, Gerald F. Petruccelli, Frederick C. Moore, Portland, Me., for plaintiff.

Steven R. Smith, Stephen C. Whiting, Portland, Me., for defendant Bruton.

James M. Bowie, Portland, Me., for Government Employees Ins.

John E. Sedgewick, Lewiston, Me., for all defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This case is before the Court on Motions for Partial Summary Judgment and Declaratory Relief filed by Plaintiff, Jamie R. McAllaster. Plaintiff seeks Partial Summary Judgment on the issue of liability against Defendant Government Employees Insurance Company (GEICO) with whom Plaintiff has a policy of automobile insurance which includes uninsured and underinsured motorist coverage. Declaratory relief on the issue of policy benefits is sought only if the Motion for Partial Summary Judgment is denied.

The case arises from an automobile accident that occurred on June 3, 1984 in which a car driven by Defendant Victoria Bruton collided with a City of Portland fire truck. Plaintiff, a passenger in the car operated by Bruton, suffered personal injuries for which he seeks to recover from Bruton, GEICO, and the City of Portland. Jurisdiction is based on diversity of citizenship,[1] 28 U.S.C. § 1332.

Prior to the filing of the present motions, Plaintiff and others had settled with Bruton's liability carrier; Bruton herself has commenced a bankruptcy action. The single limit of Bruton's liability coverage was $50,000; Plaintiff will receive $25,000. The parties have stipulated that Bruton is an underinsured motorist and the operator of an underinsured motor vehicle within the meaning of Plaintiff's policy with GEICO and that no other policies or bonds are available to Bruton and applicable to this accident. Thus, the issues before the Court are limited to whether, when, and how much GEICO must pay Plaintiff under the terms of this policy. In essence, Plaintiff brings the current motions in an effort to reach the proceeds of this policy prior to the litigation of the underlying case.

### I. *Choice of Law*

Before reaching the merits of Plaintiff's motions, the Court first addresses the

---

1. Plaintiff is a citizen of New Hampshire; Defendant Bruton is a citizen of New York; Defendant GEICO is chartered under the laws of the District of Columbia and has its principal place of business there; Defendant City of Portland exists as a municipal corporation under the laws of the State of Maine.

choice-of-law question advanced by the parties. Plaintiff argues that Connecticut law is the governing substantive law because Plaintiff resided in Connecticut both when the policy was issued and at the time of the collision. GEICO argues that Maine substantive laws apply because the accident occurred in Maine and because Maine heavily regulates underinsured motorist insurance.

In a diversity case, a federal court must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed.2d 1477 (1941). Thus, this Court must apply the choice of law test set forth by the Maine Law Court in *Baybutt Constr. Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914 (Me.1983). This test requires the Court, where the parties have not made an express, effective choice of applicable law, to determine whether Connecticut or Maine "has the most significant relationship to the transaction and the parties" with respect to the issue before the Court. *Id.* at 918. Of particular importance to the *Baybutt* court in making this determination was the location of the insured risk, which that court found to be of greater significance than any other relationship among the states, the parties, or the transaction. *Id.* at 918–19 (relying on the *Restatement (Second) of Conflict of Laws* § 193 (1971)).

■ GEICO argues that the location of the insured risk "ultimately turned out to be in Maine" because the accident occurred in Maine. The location of the insured risk under an automobile liability policy, however, is determined by "where the automobile will be garaged at least during most of the period in question." *Restatement (Second) of Conflict of Laws* § 193 comment b, at 611. Neither party has indicated to the Court where Plaintiff's automobile was to be garaged. Plaintiff asserts that he was merely visiting Maine when the accident occurred and was otherwise a citizen and resident of Connecticut. GEICO does not challenge this assertion. Thus, it appears to the Court that the location of the insured risk was Connecticut.

■ The Court's inquiry cannot end here. Under the *Baybutt* test, the Court must also determine whether any other state has a more significant relationship to the transaction and the parties. All the parties are residents of other states except Defendant City of Portland. The status of this Defendant, however, should not affect the rights created by the insurance contract between GEICO and Plaintiff. Similarly, the location of the accident does not bear a significant factual relationship to GEICO's or Plaintiff's rights under the policy. Finally, Plaintiff argues that there is no conflict between Maine and Connecticut law on any material issue. Although GEICO argues vigorously in favor of the applicability of Maine law, it has offered the Court no other significant relationship between Maine and the parties or the transaction except for Maine's regulation of underinsured motorist insurance. The Court is unpersuaded that Maine's regulation of the activities of its insurance industry outweighs Connecticut's similar interest in a policy issued in Connecticut. Consequently, the Court finds that Connecticut substantive law controls the issue now before the Court.

## II. *Summary Judgment*

Plaintiff has requested partial summary judgment on GEICO's contractual liability to pay him benefits available under the underinsured motorist provisions of the policy. Plaintiff argues that there is no genuine issue of material fact regarding GEICO's liability because Defendant Bruton has admitted that she was partially at fault.[2] GEICO, on the other hand, argues

---

**2.** Bruton's admissions occur only in the following portion of her deposition:

Q. Do you recall ever telling Jamie McAllaster that you were sorry?
A. Yes.
Q. More than once?
A. Yes.
Q. Did you ever tell him that it was your fault?
A. No.
Q. Did you ever tell him that any attorney thought it was your fault?
A. I don't remember, maybe.
Q. You may have told him that?
A. Yes.

that there is a substantial factual dispute as to whether Bruton was in fact at fault, and if so, whether this fault constitutes legal fault. The Court analyzes these arguments in light of the insurance policy in question and the controlling Connecticut statute.

Connecticut's Uninsured/Underinsured Motorist statute provides in part:

(a)(1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14–112, for the protection of persons insured thereunder *who are legally entitled to recover damages* from owners or operators of uninsured motor vehicles and underinsured motor vehicles....

Conn.Gen.Stat.Ann. § 38–175c(a)(1) (West Supp.1986) (emphasis added). GEICO's policy language tracks the statutory provision. It provides: "Under the Uninsured and Underinsured Motorists Coverage we [GEICO] will pay damages for bodily injury caused by accident *which the insured is legally entitled to recover* from the owner or operator of an Uninsured Motor Vehicle, or Underinsured Motor Vehicle...." (emphasis added).

■ The plain language of both the statute and Plaintiff's policy with GEICO requires *legal* liability on the part of Bruton as a condition precedent to the payment of benefits. *See Rhault v. Tsagarakos,* 361 F.Supp. 202, 206 (D.Vt.1973) ("The plaintiff's carrier simply stands jointly liable with the uninsured motorist, or in his stead, to the extent specified in the statute after responsibility and damages have been determined.") (construing Vermont law); *Johnson v. General Motors Corp.,* 242 F.Supp. 778, 780 (E.D.Va.1965) ("[Uninsured motorist coverage] is protection af-

forded an injured ... insured by reason of a contractual agreement *after* the liability of the uninsured motorist, known or unknown, has been established by a court of competent jurisdiction.") (emphasis in original). *See also Nationwide Ins. Co. v. Gode,* 187 Conn. 386, 399, 446 A.2d 1059, 1065 (1982) ("since claim is made against an insured's uninsured motorist coverage *after* it is determined that the at-fault party is underinsured") (footnote omitted; emphasis added). *But see* A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 7.3 (2d ed. 1985) (questioning whether burden of proof on legal fault should be allocated to claimant). *Compare also Sowell v. Travelers Indemnity Ins. Co.,* 31 Conn.Supp. 413, 415–16, 332 A.2d 792, 794 (1974) ("policy contains no condition precedent to arbitration"). The statutory and policy language both clearly contemplate that the liability of the carrier providing underinsured motorist coverage does not, over objection, ripen into an obligation to pay under its policy until its insured has obtained a determination *by judgment* that the tortfeasor was guilty of negligence causing the insured's injury for which recovery is sought against the carrier.

Defendant Bruton's belief regarding her degree of fault does not establish, in and of itself, *legal* liability for Plaintiff's injuries. The Court finds that there are a great number of factual issues that the jury must resolve before it can be decided whether Bruton is legally liable for Plaintiff's injuries. An adjudication of legal liability may properly encompass a wide variety of factual considerations going to the existence of negligence, proximate cause, and the probative force of the evidence in respect to pleaded defenses to liability. When properly made on all of the evidence, such an adjudication may justifiably conflict with the view of either party to the

Q. Do you think it was your fault?
A. No.
Q. Do you think it was even a little bit your fault?
A. Yes.
Q. Do you think it was partly your fault and partly the fire truck's fault?
A. Yes.

Q. And why do you say that?
A. Because I feel that I was using precaution through the intersection, and I feel that they were speeding through an intersection and I don't—I didn't hear sirens or did I see any lights; therefore, I don't feel that it was 100 percent my fault.

accident as to the existence of culpable fault, and often does. Summary judgment on the issue of GEICO's liability, contingent as it is on a finding of legal liability on the part of Bruton, is therefore inappropriate.

### III. *Declaratory Relief*

■ As an alternative to his Motion for Partial Summary Judgment, Plaintiff requests a Declaratory Judgment as to whether the presence of an insured tortfeasor affects his rights under the underinsured motorist provisions of his policy with GEICO.[3] The Court finds that the question is proper for declaratory relief; it is a question of law and represents a real controversy between the parties. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). *See generally* Annot., *Application of declaratory judgment acts to questions in respect of insurance policies,* 142 ALR 8 (1943).

■ Plaintiff requests declaratory relief with respect to two separate issues: one, whether he is entitled to the full $300,000 of his underinsured motorist coverage because his injuries will exceed $350,000; and two, whether the presence of an insured[4] vehicle alters the contractual liabilities between him and GEICO. The Court addresses each in turn.

### A. *Limits of Liability*

■ Although Plaintiff seeks to recover the full amount of his policy coverage, GEICO argues that its maximum liability of $300,000 has been reduced by the $50,000 of insurance *coverage* available to Bruton. GEICO relies in large part on the language of its policy,[5] particularly the provision that states: "The amount payable under this Coverage will be reduced by all amounts: (a) paid by or for all persons or organizations liable for the injury...."[6] This language clearly sets forth limits upon how much GEICO must pay. Its plain

---

**3.** Under Connecticut law and the arbitration clause contained in the policy in question, Plaintiff may request binding arbitration regarding his right to recover damages from Bruton, the amount of such damages, and all other issues of coverage including any right to set off. *Wilson v. Security Ins. Group,* 199 Conn. 618, 623–24, 509 A.2d 467, 470 (1986) (incorporating mandate of Conn.Gen Stat.Ann. § 38–175c(a)(1) into policy's arbitration clause). It would appear that Plaintiff has elected to bring suit in this Court and to ask this Court to make these determinations rather than proceed under the arbitration provisions of the policy.

**4.** Plaintiff also argues that the Court should consider Defendant City of Portland to be an uninsured motorist within the meaning of the GEICO policy because the City has no primary liability policy. The City has, however, set aside sufficient funds to provide for $100,000 of self-insurance. This set aside appears to comply with both the provision governing the amount of coverage in Me.Rev.Stat.Ann.tit. 24–A, § 2902(2) (Supp.1986) and the Maine Financial Responsibility Act, Me.Rev.Stat.Ann.tit. 29, § 787(2) (1978). In addition, the City carries $200,000 of excess liability coverage. After considering the language of the GEICO policy, which excludes self-insured vehicles from the definition of uninsured vehicles, and the analogous provisions of Connecticut law, Conn.Gen. Stat.Ann. §§ 14–117(c)(4), –129 (1970 & Supp. 1986) & § 38–327 (Supp.1986), the Court finds that the City is not uninsured within the meaning of those provisions.

**5.** GEICO also relies on *Connolly v. Royal Globe Ins. Co.,* 455 A.2d 932 (Me.1983) (per Carter, J.). In *Connolly,* the Maine court explicitly based its calculations on the amount of coverage available. *Id.* at 936. It should be noted, however, that in *Connolly* the amount by which coverage was reduced was also the amount that the injured party had *actually* recovered under the tortfeasor's liability coverage. *Id.* at 935–36. Consequently, this Court finds that *Connolly* would not necessarily control the result in this case.

**6.** The pertinent part of the policy provides:

3. We will not make any payment for *bodily injury* caused by an accident involving an *Underinsured Motor Vehicle* until the bodily injury liability limits under all policies and bonds available to the uninsured motorist and applicable to the accident have been exhausted.

The amount payable under this Coverage will be reduced by all amounts:
(a) paid by or for all persons or organizations liable for the injury;
(b) paid or payable under the Bodily Injury Coverage of this policy;
(c) paid or payable under any workmen's compensation law, disability benefits law or any similar law; or
(d) paid or payable under basic reparations benefits.

language states that coverage is reduced by amounts "paid" to the insured, not by amounts "paid or *payable*." Thus, only the $25,000 actually paid to Plaintiff should be deducted from GEICO's maximum liability, leaving coverage at $275,000.

The Court's analysis does not end here, however, since the policy language does not unilaterally control the Court's decision. It is well established that contracts of liability insurance are subject to statutory provisions and are deemed to incorporate statutory requirements whether they are contained in the insurance contract or not. Under Connecticut law, "any provisions of a private contract of insurance which conflict with the statutes or regulations must give way to the latter." *Nationwide Ins. Co. v. Gode*, 187 Conn. at 399, 446 A.2d at 1065; Conn.Gen.Stat.Ann. § 38–175d (West 1969). The Court, therefore, must also consider the relevant statutory and regulatory provisions, a consideration that the Court undertakes on its own initiative since neither party has based its arguments on Connecticut statutory or case law.

Connecticut's Underinsured Motorist statute provides no explicit guidance regarding reductions in coverage.[7] The Court therefore turns to the applicable insurance regulations. The Connecticut Supreme Court has held that "the [insurance] regulations which apply to uninsured motorist coverage must equally apply to underinsured motorist coverage." *Gode*, 187 Conn. at 399–400, 446 A.2d at 1065. Moreover, the controlling insurance regulations have the force of statutory law. *Pecker v. Aetna Casualty & Surety Co.*, 171 Conn. 443, 449, 370 A.2d 1006, 1009 (1976) (holding that "other insurance" clauses in uninsured motorist coverage provisions are invalid). In addition, the court has found that the regulations provide the exclusive methods by which an insurer may reduce its liability under an underinsured motorist provision. *Gode*, 187 Conn. at 398–99, 446 A.2d at 1065. Finally, the Connecticut court appears to construe the regulations against the insurer. *See id.* at 400, 446 A.2d at 1065 (refusing to give effect to a limitation of payment provision in the policy where the provision was not *expressly* authorized by the regulations).

The regulations provide that policies of insurance should be construed to provide coverage. Regs., Conn. State Agencies § 38–175a–3.[8] Although the regulations are not binding in the case currently before the Court,[9] they offer persuasive authority

---

**7.** The additional provisions of Connecticut's Underinsured Motorist statute state:

(b)(1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.
(2) For the purposes of this section, an "underinsured motor vehicle" means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of subsection (b) of this section.

Conn.Gen.Stat.Ann. § 38–175c(b)(1), (2) (West. Supp.1986). The Connecticut statute is similar but not identical to the Maine Uninsured/Underinsured statute, Me.Rev.Stat.Ann. tit. 24–A, § 2902 (1974 & Supp.1986).

**8.** The regulations provide:

Language of policies. Presumption re coverage

The provisions herein required need not be stated in the language or form of these regulations, but the coverage afforded shall be of equal or greater benefit to the insured. Policies affording a coverage to which these regulations apply shall be deemed to afford insurance under such coverage at least equal to that required by these regulations.

Regs., Conn. State Agencies § 38–175a–3.

**9.** The regulations seek only to guarantee to the insured the statutory minimum amounts of coverage. They provide:

Exceptions

These regulations do not apply to the insurance afforded under any policy: (1) to the extent that the insurance afforded exceeds the limits specified in subsection (a) of § 14–112 of the general statutes and, where applicable, § 38–320 of the general statutes or (2) if the

as to the meaning of the statutory language. The pertinent part of these regulations [10] provide "that the policy may provide for the reduction of limits to the extent that damages have been (1) *paid* by or on behalf of any person responsible for the injury." Regs., Conn. State Agencies § 38–175a–6(d)(1) (emphasis added). Thus, the result under the regulations is no different from the result under GEICO's policy language: the liability of GEICO should be reduced by the $25,000 received by Plaintiff on behalf of Bruton. The Court finds no support for GEICO's proposition that the coverage should be reduced by the full amount of liability insurance available to Bruton. Therefore, GEICO's maximum liability is $275,000.

### B. *Presence of an Insured Motor Vehicle*

Plaintiff's second claim is that the presence of the City of Portland firetruck is irrelevant to GEICO's contractual liability to Plaintiff. GEICO maintains, however, that Plaintiff must first exhaust his remedies against the City of Portland before he can recover any insurance proceeds from GEICO.

GEICO relies in large part on the language of its policy, *see supra* n. 6, and argues that the following provisions, when read in context, support its position: GEICO "will not make any payment ... until the bodily injury liability limits under all policies and bonds available to the uninsured motorist and applicable to the accident have been exhausted. The amount payable ... will be reduced by all amounts: (a) paid by or for all persons or organizations liable for the injury." The Court finds that there is no basis for the construction GEICO offers. In essence, GEICO asks the Court to ignore the express limitation contained in the first sentence of its own policy language—that those policies that must be exhausted are those "available to the uninsured motorist." GEICO, however, has stipulated that no other policies or bonds are available to Bruton. Moreover, if the Court were applying Maine law, it would construe this language against the insurer, *e.g.*, *Baybutt, supra*, 455 A.2d at 921, and find that the policy merely requires exhaustion as to Bruton. This, however, is not the standard path of analysis taken by the Connecticut court. Instead, that court appears to rely more heavily on the Underinsured Motorist statute and regulations to determine the coverage available. Consequently, the Court turns to these sources to determine whether the involvement of an insured vehicle in this collision affects Plaintiff's rights.

Although the Connecticut Supreme Court has on many occasions interpreted its Underinsured Motorist statute,[11] the Court

policy contains an underlying insurance requirement or provides for a retained limit of self-insurance equal to or greater than the limits specified in said subsection (a) of § 14–112 and, where applicable, § 38–320. Regs., Conn. State Agencies § 38–175a–4.

**10.** The applicable section of the regulations provide:

(d) Limits of liability. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of § 14–112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been

(1) paid by or on behalf of any person responsible for the injury,

(2) paid or are payable under any workmen's compensation or disability benefits law, or

(3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense

paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment.

(e) Recovery over. The insurer may require the insured to hold in trust all rights against third parties or to exercise such rights after the insurer has paid any claim, provided that the insurer shall not acquire by assignment, prior to settlement or judgment, its insured's right of action to recover for bodily injury from any third party. Regs., Conn. State Agencies § 38–175a–6(d)(e).

**11.** *See, e.g., Wilson v. Security Ins. Group*, 199 Conn. 618, 509 A.2d 467 (1986); *Dixon v. Empire Mut. Ins. Co.*, 189 Conn. 449, 456 A.2d 335 (1983); *Nationwide Ins. Co. v. Gode*, 187 Conn. 386, 446 A.2d 1059 (1982); *Oliva v. Aetna Casualty & Sur. Co.*, 181 Conn. 37, 434 A.2d 304

finds that it has not addressed the precise point at issue here. The opinions of the Connecticut court do, however, offer this Court some guidance in its present task. For instance in *Gode,* the court noted:

> The 1979 amendment to the statute added subsections (b)(1) and (2) and the reference to the underinsured motor vehicle coverage contained in § 38–175c(a). The purpose of this amendment was to remedy the "anomalous situation" which we noted in *Roy v. Centennial Ins. Co.,* 171 Conn. 463, 475, 370 A.2d 1011 (1976), and *Simonette v. Great American Ins. Co.,* 165 Conn. 466, 471, 338 A.2d 453 (1973), where an injured party could find himself in a better position if the tortfeasor had no liability insurance than if he had only the statutory minimum amount.

*Gode,* 187 Conn. at 390–91, 446 A.2d at 1061 (footnote omitted); *see also Connolly v. Royal Globe Ins. Co.,* 455 A.2d 932, 936 (Me.1983) (per Carter, J.). The court held that "the legislature, in enacting § 38–175c(b)(1) and (2) reasonably intended that underinsured motorist coverage be accorded treatment similar to that given to uninsured motorist coverage." *Gode,* 187 Conn. at 397, 446 A.2d at 1064.

The relevant parts of Connecticut's Underinsured Motorist statute, *see supra* n. 7, require that an insurance company must pay its insured "up to the limits of the policy's uninsured motorist coverage after the limits of liability under all [policies or bonds] applicable at the time of the accident have been exhausted by payment of judgments or settlements." Conn.Gen. Stat.Ann. § 38–175c(b)(1). The statute does not indicate that the applicable bonds must be available to the underinsured motorist. Thus, the plain language of this part of the statute would appear to support GEICO's position. The statute, however, goes on to provide that "in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage." *Id.*

Although at first blush the statute is hardly perspicuous, the Court believes its meaning can be illustrated by example. For instance, insured party A, who has $50,000 of uninsured/underinsured motorist coverage, collides with underinsured party B, who has $10,000 of bodily injury liability coverage. Under the statute, A may recover up to the full amount of his underinsured motorist coverage; however, A may not collect both his coverage and B's coverage for a total of $60,000. Similarly, after B has paid A the $10,000, A may then collect $40,000 from his own policy. This is precisely the result reached by this Court in Part III A, *supra.* *See also Connolly,* 455 A.2d at 936.

■ If, however, the Court brings the example closer to the facts of the case before it and adds a third vehicle, the result under the same application of the statute becomes absurd. Suppose C were also involved in this collision and had $100,000 of bodily injury liability coverage. If this $100,000 is considered to be a policy applicable to the accident, then the same statutory language would have the unconscionable effect of limiting A's total recovery to $50,000 regardless of A's injuries. The Court, therefore, concludes that the Connecticut legislature was not contemplating multi-vehicle accidents when it enacted section 13–175c(b)(1) but was merely considering the relationship between the insured and the underinsured motorist. It is clearly proper for this Court to refuse to interpret the text of this statute to include all participants in an accident where such an interpretation leads to an absurd result. *See* 2A N. Singer, *Sutherland Statutory Construction* § 46.07, at 110 (4th ed. 1984). Consequently, the Court finds that the Connecticut statute does not address the issue before it.

■ Finding no express guidance in the statute, the Court again turns to the regulations, which provide the exclusive methods by which GEICO may reduce its liabili-

(1980); *Pecker v. Aetna Casualty & Sur. Co.,* 171 Conn. 443, 370 A.2d 1006 (1976); *Roy v. Centennial Ins. Co.,* 171 Conn. 463, 370 A.2d 1011

(1976); *Fidelity & Casualty Co. v. Darrow,* 161 Conn. 169, 286 A.2d 288 (1971).

ty, *see supra.* The regulations state that "the policy may provide for the reduction of limits [of liability] to the extent that *damages* have been (1) *paid* by or on behalf of any person responsible for the injury." Regs., Conn. State Agencies § 38–175a–6(d)(1) (emphasis added). The proper effect of this reduction is merely to prevent double recoveries. *Tholen v. Carney,* 555 F.2d 479, 480–81 (5th Cir.1977). *See generally* Widiss, *supra,* § 17.3.

■ There is nothing in the regulatory language that can be construed as a requirement that the insured pursue alternative methods of recovery, other than from the underinsured motorist, before he can recover from his own policy. Instead, subsection (d) of the regulations merely provides that if the insured has already recovered some payment for his damages, the damages must be reduced accordingly. Finally, subsection (e) of the regulations explicitly defeats GEICO's argument. It provides that the underinsured carrier's right to recovery over against the other tortfeasors and their insurance carriers arises only "after the [underinsured] insurer has paid any claim." Regs., Conn. State Agencies § 38–175a–6(e). The net effect of the regulations is that once the legal liability of Bruton is established and the policies available to her are exhausted, GEICO is liable for the full amount of Plaintiff's damages or the aforementioned limit of its liability, whichever is less. The Court finds no support in the policy, the statute, or the regulations for the proposition that Plaintiff must recover first from the City of Portland before he can reach the proceeds of his own policy with GEICO.

## IV.

Accordingly, for the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment is hereby *DENIED.* In addition, it is hereby *DECLARED* and *ADJUDGED* that the limit of Defendant GEICO's liability under the aforementioned policy of insurance is $275,000 and that such liability attaches with a determination of Defendant Bruton's liability irrespective of the presence of Defendant City of Portland.

So ORDERED.