**Marci MULLEN**

v.

**LIBERTY MUTUAL INSURANCE COMPANY and Hanover Insurance Company.**

Supreme Judicial Court of Maine.

Argued March 6, 1991.
Decided April 18, 1991.

William J. Kelleher (orally), Augusta, for Hanover.

Bruce Mallonee (orally), Rudman & Winchell, Bangor, for Liberty Mut. Ins. Co.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, COLLINS and BRODY, JJ.

GLASSMAN, Justice.

Marci Mullen appeals from a summary judgment entered in the Superior Court (Waldo County, *Alexander, J.*) for the defendants, Liberty Mutual Insurance Company (Liberty Mutual) and Hanover Insurance Company (Hanover), on her claim that pursuant to 24–A M.R.S.A. § 2902 (1990),[1] she was legally entitled to recover damages under the underinsured motorist provisions in the Liberty Mutual and Hanover insurance policies. Mullen contends that the trial court erred in holding that section 2902(1) does not provide for recovery under an underinsured motor vehicle provision in an insurance policy when, as here, the limit of liability provided in the tortfeasor's insurance policy exceeds the total amount of underinsured motor vehicle coverage available to the injured party. We affirm the judgment of the Superior Court.

The following facts are undisputed: Mullen, who was insured under the policies of Liberty Mutual and Hanover, was injured while a passenger in a vehicle struck by a vehicle operated by Richard Boody. Three other persons involved in the collision were also injured. The insurance policy on the Boody vehicle provided for a limit of liability up to $100,000 per occurrence. Under the provisions of a settlement agreement the other three persons received an aggregate of $95,000 and Mullen received $5,000. In the instant action, Mullen alleged that her damages exceeded $100,000 and that she was entitled to recover $40,000 under the underinsured motorist provisions of the insurance contracts between Liberty Mutual and the driver of the car in which Mullen was a passenger in the amount of $20,000 and between Hanover and Mullen's father in the amount of $25,000. In their answers to Mullen's complaint both Liberty Mutual and Hanover denied any obligation to pay Mullen and filed a joint motion for a summary judgment on the ground that the Boody vehicle was not underinsured within the meaning of section 2902(1). From the summary judgment entered for Liberty Mutual and Hanover pursuant to the court's order granting their motion, Mullen appeals.

■ Mullen's specific contention is that the word "coverage" as used in section 2902(1) requires that in determining whether Boody's vehicle is underinsured the $5,000 she *actually recovered* under that policy is compared to the aggregate amount of $45,000 available to her under the provisions of the policies of Liberty Mutual and Hanover. Accordingly, she argues that she has a potential legal entitlement to $40,000 from Liberty Mutual and Hanover. We disagree.

Section 2902(1) defines an underinsured motor vehicle as "a motor vehicle for which *coverage* is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage." (Emphasis added). We previously have held that *coverage* can be interpreted to encompass the aggregated limits of sev-

---

1. Section 2902 provides in pertinent part:

    1. No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle. The coverage herein required may be referred to as "uninsured vehicle coverage." *For the purposes of this section "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.* (Emphasis added).

eral insurance policies.[2] *Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932, 934 (Me. 1983). Thus, in determining whether Boody's vehicle was underinsured, Mullen is entitled to aggregate the limits of all insurance policies for which the insurers are potentially liable for her damages if in fact Boody's car is underinsured, and Liberty Mutual and Hanover are entitled to aggregate the limits of any liability policies carried by Boody for which the insurers have a potential liability for Mullen's damages. However, in each instance the coverage being aggregated is the limit value on the face of each of the policies. In the instant case, the determination of whether Boody's vehicle was underinsured is based entirely on whether the total liability insurance on that vehicle is exceeded by the total of the insurance provided by the Liberty Mutual and Hanover policies. There is nothing in the language of section 2902(1), or in its legislative history, to support Mullen's claim that coverage must be determined by reference to the number of other claimants, the amounts of their damages, their various level of uninsured vehicle protection, and any other recovery on their claims. On the contrary, the plain meaning of an insurance policy's *coverage* is the scope or extent of the risk protected against. *Webster's Third International Dictionary* 525 (1971); *Black's Law Dictionary* 330 (5th ed.1979).

Because the extent of a tortfeasor's protection from liability can only be determined from the face amount recited in the tortfeasor's liability policy, it is of no consequence to a tortfeasor's coverage what fraction of the policy is available to any particular injured party. Mullen errs in focusing the liability side of the comparison test on *her* recovery from Boody's liability insurance. The statute focuses on the "motor vehicle for which coverage is provided," that is, on the limits of the liability of Boody's insurer for any accident involving that vehicle. If the Legislature had chosen by specific language in section 2902 to expand the ordinary meaning of the word *coverage*, it could have done so, as it did with regard to the term "uninsured motor vehicle," which by statutory definition includes a vehicle that, although insured, is insured with a carrier that because of insolvency is unable to satisfy its legal liability within the limits of its policy.

▮ The fundamental rule in statutory construction is that words must be given their plain ordinary meaning. *Paradis v. Webber Hospital*, 409 A.2d 672, 675 (Me. 1979). We can disregard the strict wording of a statute if it is necessary to avoid an absurd result that frustrates the legislative purpose, *see State v. Niles*, 585 A.2d 181, 182 (Me.1990). Mullen argues that her recovery of $5,000 presents such an absurd result and is contrary to the remedial policy of section 2902. That the present statutory language may cause hardship to Mullen in this case does not render the results absurd, nor does it present justification to disregard the wording of the statute. While section 2902 reflects a policy of compensating injured parties and encouraging settlements, *Wescott v. Allstate Ins.*, 397 A.2d 156, 167, 169 (Me.1979), the use of the face amount of a tortfeasor's liability insurance to determine underinsured status also reflects a policy decision. The early determination whether underinsured motor vehicle coverage applies, before other injured parties have established their damages and their entitlements to a tortfeasor's assets, is a legitimate legislative objective. For aught that appears in the record, Boody may have had personal assets sufficient to satisfy Mullen's entire damages claim.

It is for the Legislature, and not for us, to amend section 2902 to provide underinsured motor vehicle benefits to an injured party whose recovery on her liability claim against the tortfeasor, notwithstanding the amount of coverage on the insured vehicle involved, is less than the aggregate limits of her underinsured motor vehicle coverage. Based on the plain ordinary meaning of the present statutory language, the trial court properly held that the Boody vehicle

---

2. *Cf. Simpson v. Hanover Ins. Co.*, 588 A.2d 1183, 1186 (Me.1991) (under 24–A M.R.S.A. § 2902(4) injured party's underinsured motorist coverage is face amount of policy minus settlement received from tortfeasor).

was not an underinsured motor vehicle within the purview of section 2902(1).

The entry is:

Judgment affirmed.

McKUSICK, C.J., and ROBERTS, WATHEN and BRODY, JJ., concur.

COLLINS, Justice, dissenting.

In my view, Maine's uninsured motorist statute, 24–A M.R.S.A. § 2902(1) (1990), allows an insured to recover against underinsured motorist coverage where the driver responsible for the accident has adequate "paper" liability coverage, but the amount actually available for recovery is depleted by multiple claims. Because I find no support anywhere in the statute or its legislative history for the contrary interpretation applied by the Court, I respectfully dissent.

" '[U]nderinsured motor vehicle' means a motor vehicle for which coverage is provided, but in amounts ... less than the limits of the injured party's uninsured vehicle coverage." 24–A M.R.S.A. § 2902(1) (1990). Is the tortfeasor's liability "coverage" simply the coverage limit on the face of the policy, as the Court concludes, or the coverage actually provided to the injured party? The question is one of first impression in Maine.[3]

The Superior Court read section 2902(1) to require a direct comparison between the coverage limits under the negligent party's liability policy and the total of the policy limits of the underinsured-motorist coverage available to the injured party. In reading "coverage" to mean "limits of coverage," the Superior Court stated that it was giving the statutory definition its "common and ordinary meaning," citing *Hewett v. Kennebec Valley Mental Health Ass'n*, 557 A.2d 622, 624 (Me.1989). Unlike the Court, I find this analysis unconvincing.

The Superior Court used various terms synonymously with "coverage"—the amount "available under" the policy, the "proceeds" of the policy, the "limit." We have already recognized that section 2902(1) is ambiguous with regard to the meaning of the terms "limits" and "coverage." *Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932, 934 (Me.1983). The definition of "underinsured motor vehicle" compares "coverage ... *provided*" with "*limits* of ... coverage." 24–A M.R.S.A. 2902(1) (1990) (emphasis added). Contrary to the Court's opinion, the plain meaning rule does not definitively settle this issue.[4] "Coverage" is an undefined term in the statute, and the Court's resort to an asserted "plain meaning" fails, in my view, to meet our responsibility to construe it consistently with the purpose of the Legislature.

"Terms in a statute must be construed in light of the subject matter, purpose of the statute, and the consequences of a particular interpretation." *Church v. McKee*, 387 A.2d 754, 756 (Me.1978). We strive to give effect to the legislative purpose, even where the "common and ordinary meaning" of the words of the statute obscures that purpose. *See State v. Niles*, 585 A.2d 181, 182 (Me.1990).

We have previously expressed our understanding of the legislative policies underlying this statute. In *Wescott v. Allstate Ins.*, 397 A.2d 156 (Me.1979), we held that

---

**3.** We were asked to decide this issue in *Bazinet v. Concord Gen. Mut. Ins. Co.*, 513 A.2d 279 (Me.1986), but declined to do so, finding the question premature on the procedural posture of that case. *See id.*, 513 A.2d at 282.

This question has been a prolific source of litigation nationwide. *See generally* Stott, *Underinsured Motorist Coverage: Working Out the Bugs*, 36 Fed'n Ins. Corp. Couns. J. 121 (1986), *reprinted in* 1 Ins.L.Anthol. 289 (1987); Anno., *Uninsured and Underinsured Motorist Coverage: Recoverability, Under Uninsured or Underinsured Motorist Coverage, of Deficiencies in Compensation Afforded Injured Party by Tortfeasor's Liability Coverage*, 24 A.L.R.4th 13

(1983); 2 A. Widiss, *Uninsured and Underinsured Motorist Coverage* § 32.1 at 11–12 (1985 & Supp.1990).

**4.** Moreover, even if the term "coverage" did signify a limits-to-limits comparison, the statute would not necessarily dictate the result reached by the Court. Courts even in states with statutes explicitly requiring a limits-to-limits comparison have held that underinsured-motorist coverage was still applicable, where the available recovery was reduced due to multiple claims. *See, e.g.*, Phillips, *Underinsured Motorist Coverage in Mississippi*, 3 Miss.Coll.L.Rev. 65, 82–83 (1982).

the statute preempted certain contract provisions that tended to diminish coverage. We relied on the Legislature's "strong public policy in favor of the just compensation of accident victims," *id.* at 167, and stated, "The legislative intent is to benefit all insured motorists by throwing the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance industry for a premium." *Id.* at 166. I infer from our opinion in *Wescott* that this statute is remedial legislation that should be construed liberally to accomplish its intent, which is "to protect an insured to the extent of his actual loss." *See id.* at 167, 170.

We again applied our understanding of the statute as remedial legislation in *Lanzo v. State Farm Mut. Ins. Co.*, 524 A.2d 47 (Me.1987). In *Lanzo*, the question was whether the "hit-and-run" language in the statute required physical contact, an issue that (like the multiple-claims issue in the present case) has divided other jurisdictions. *Id.* at 49. Noting that "the legislative focus in enacting section 2902(1) was to provide recovery for injuries caused by financially irresponsible drivers," we construed the statute so as to avoid the "anomalous result that victims of an uninsured or underinsured driver could recover in the absence of contact but the victim of an unknown driver could not." *Id.* at 50. *See also Young v. Greater Portland Transit Dist.*, 535 A.2d 417, 419–20 (Me.1987) (refusing to exclude claims due to damage caused by government vehicles from uninsured-motorist coverage). Thus, we have assumed that section 2902(1) has a broad remedial purpose, and have declined to construe it in ways that would lead to anomalies in conflict with that broad purpose.

The result of the Court's decision is such an anomaly. Under the Court's construc-

tion of the statute, Mullen would have been nine times better off if Boody had been completely uninsured, because she then could have recovered the full $45,000 in uninsured-motorist coverage.[5] Because I see no reason to presume that the Legislature intended this anomalous result, which is not required by the statutory language, I would decline to impose it.

The Court suggests that facilitating early determination whether underinsured motorist coverage applies is a "legitimate legislative objective." That argument might carry more weight if the Legislature had ever given the slightest indication that such was its object. However, neither the statute nor the legislative history even hints at such a legislative purpose.

Even if the Legislature had favored early determination whether underinsured motorist coverage applies, however, the Court does not explain why a simple limits-to-limits comparison better accomplishes that purpose than does awaiting the final outcome of the litigation concerning the underlying incident. Because the injured party must establish a legal entitlement to recovery to be eligible for underinsured-motorist coverage, a simple limits-to-limits test for underinsured-motorist coverage produces no earlier determination of eligibility. Jurisdictions that look to the actual amount available for recovery must, of course, routinely determine the actual recovery; this process does not appear to cause undue delay in those states. *See, e.g.,* Findling & Germano, *Underinsurance in Indiana: An Illusion of Coverage?*, 21 Ind.L.Rev. 205, 214 (1988).

Not finding the Court's construction of the statute to be one required by the common and ordinary meaning of the words, and considering it both inconsistent with

---

5. Most courts that have considered the multiple-claims issue have taken note of this anomaly. *See, e.g., Porter v. Empire Fire and Marine Ins. Co.*, 106 Ariz. 274, 475 P.2d 258, 262–63 (1970); *Williams v. Hartford Acc. & Indem. Co.*, 382 So.2d 1216, 1218 (Fla.1980); *Gorton v. Reliance Ins. Co.*, 77 N.J. 563, 391 A.2d 1219, 1223 (1978); *State Farm Mut. Auto. Ins. Co. v. Anderson*, 332 So.2d 623, 625 (Fla.App.1976); *Knudson v. Grange Mut. Companies*, 31 Ohio App.3d 20, 507 N.E.2d 1155, 1157–58 (1986). Other states are split, however, on whether to allow the anomaly to stand. *Compare Gardner v. American Ins. Co.*, 95 Nev. 271, 593 P.2d 465 (1979) (statute creates anomaly, but solution is for legislature) *with Palisbo v. Hawaiian Ins. & Guaranty Co.*, 57 Hawaii 10, 547 P.2d 1350 (1976) (refusing to allow anomaly; purpose, rather than literal reading, of statute controls).

the intent of the Legislature and unnecessary to the presumed public policy goal of quick settlement, I would vacate the court's grant of summary judgment.